## Beach *vs.* Barons.

By a lease executed by and between H. and B. on the 28th of February, 1844, B. covenanted to sow and raise forty acres of wheat each year, and to deliver to H. one half of the wheat after it was harvested, by the first of October in each year, at one of the flouring mills in R., to be designated by H.  H. conveyed the premises, and assigned the lease to the plaintiff on the 26th of March, 1845.  In an action by the plaintiff, against B. the lessee, for a breach of covenant, one of the breaches assigned was that in the fall of 1845 the defendant harvested a large quantity of wheat, raised on the demised premises, to wit, 600 bushels, and did not deliver the same to H. or to the plaintiff, by the first of October of that year, at one of the flouring mills, &c. but sold and converted and disposed of the whole of said wheat to his own use.  The defendant pleaded that he did not, in the fall of 1845, raise 600 bushels of wheat on said premises.  *Held*, on demurrer, that the plea was bad, in not meeting the breach assigned.

*Held also*, that the breach was well assigned, although the plaintiff in his declaration, claimed the whole 600 bushels of wheat; and although it was not alledged that a place was designated at which to deliver the wheat, or that the defendant was requested to deliver it.

*Held further*, that the covenant of B. was not collateral, but was annexed to and running with the land; that H.'s right to the growing crops passed by the deed and assignment of the lease, to his grantee and assignee; and that the plaintiff could maintain an action for the sale and conversion of the wheat which was cut and harvested afterwards.

And *Held* that a plea admitting the sale and conversion of the plaintiff's half of the wheat, and offering nothing in justification, but merely alledging that the plaintiff omitted to designate the flouring mill at which the wheat was delivered, was insufficient.

Where a declaration in covenant alledges as a breach, the cutting and carrying away of standing wood and timber, a plea denying that the defendant cut and carried away any wood and timber, is bad, on demurrer.

Beach *v.* Barons.

A plea, in an action for breach of covenant, alledging that the defendant has in all things well and truly kept, fulfilled and performed all and singular the covenants, agreements and conditions in the lease contained, is bad, as tendering an issue of law and not of fact; and for not showing how the defendant performed his covenants, or the facts which constituted such performance.

The several breaches assigned in a declaration in covenant are in the nature of distinct counts, and a plea to the whole declaration must contain matter which will be a legal answer to all the breaches. If a replication to such a plea is good as it respects either of the breaches assigned, although it may not be a good answer to the plea, so far as the plea assumes to answer other breaches, the replication will nevertheless be upheld, on demurrer.

For a breach of covenant by a lessee the lessor, or person standing in his place —the landlord at the time the covenant is broken—is the proper person to bring the action; and this, notwithstanding he has since assigned the lease and conveyed the demised premises, to another.

ACTION for breach of covenants; commenced prior to the code. Demurrers to pleas and replications. The declaration was upon a lease or agreement in writing under seal, bearing date February 28th, 1844, made and entered into by and between John Hungerford, by William Blossom his attorney, of one part, and the defendant of the other part; by which the said Hungerford, who was the owner in fee of the premises therein described, leased to the defendant certain premises, being one hundred and seventy-two acres of land in the town of Irondequoit in the county of Monroe, for and during the term of three years from the first day of April in the year aforesaid. The declaration averred that in and by said lease the defendant covenanted to cultivate, manage and work the said premises in a good farm like manner, and to deliver one half part and portion of all the crops to be raised on said premises during said lease as thereinafter mentioned, to be delivered to the said attorney of said Hungerford, immediately after cutting, securing and harvesting the same as thereinafter mentioned; to cultivate, sow and raise forty acres of wheat each and every year during said term, to be sown between the first and the twentieth of September, the ground to be plowed three times, and a bushel and a half of clean pure seed to be sown to each acre. To harvest, thresh and clean the wheat immediately after harvest, and de-

Beach *v.* Barons.

liver one half of the same to said Hungerford or his attorney by the first day of October in each year, in a condition for flouring, at one of the flouring mills in the city of Rochester, to be designated by said Hungerford. To sow each and every year five bushels of clover seed on said farm at an average of four quarts to the acre; said Hungerford to furnish all the clover seed for the first year, and one half for the other two years. Said Hungerford to find all the plaster, &c. The defendant to make and draw out and lay up into good fence, &c. two thousand rails, &c. for which Hungerford was to pay $1 per hundred; which fence was to be made on said premises whenever Hungerford should direct, and to be done by the first day of June then next. That said defendant was not to cut any timber standing on said premises except for fence as aforesaid, and was to be confined for the use of fire wood to down timber. The lease contained various other provisions and covenants, not necessary to be mentioned. The declaration then averred the entry by the defendant into the possession of said premises, under and by virtue of the lease. And that he continued so in possession thereof until the first of April, 1846. It next averred that said Hungerford, whilst the defendant was so in possession of said premises, under and by virtue of said lease, viz. on the 26th day of March, 1845, by deed duly executed, bearing date on that day, conveyed the said premises to the plaintiff; and at the same time assigned the said lease, with all his interest therein, to the said plaintiff; by which said deed and the assignment of the said lease all the reversionary interest of said Hungerford in said demised premises, and in and to the rents, covenants and conditions in said lease mentioned, became vested in the plaintiff. The declaration then contained the following assignments of breaches by the defendant of the covenants in the said lease: First. That the defendant, after the interests of said Hungerford became vested in the plaintiff in manner aforesaid, neglected to cultivate, sow and raise forty acres of wheat during each year thereafter, according to the terms of the lease, but on the contrary, the said defendant cultivated, sowed, and raised only ten acres of wheat on said premises during the years 1844, 1845, and 1846,

contrary to the form and effect of said lease, &c. Second. That the defendant, in the fall of the year 1845, harvested, threshed and cleaned a large quantity of wheat raised on said premises, to wit, six hundred bushels, and did not deliver the same to the said John Hungerford or his attorney, or to the plaintiff or his attorney, by the first day of October in that year, at one of the flouring mills in the city of Rochester, or elsewhere, but on the contrary the said defendant sold, converted, and disposed of the whole of said wheat to his own use, contrary to the form and effect of the said lease, &c. Third. That the defendant, in the summer and fall of 1845, raised on said premises a large quantity of crops, viz. five hundred bushels of corn, the like quantity of oats, peas, barley and potatoes, and twenty tons of hay. That said defendant cut, harvested and secured said crops, but had never delivered to said plaintiff or his attorney, or to said Hungerford or his attorney, one half or any part of said crops or any or either of them, but on the contrary, had converted and disposed of the whole of them to his own use; contrary to the form and effect of said lease, &c. Fourth. That after the interests of Hungerford had become vested in the plaintiff in manner aforesaid, viz. on the first of December, 1845, and both before and afterwards, the defendant cut down and carried away a great quantity of wood and timber then standing on said premises, for other purposes than for fence or firewood upon said premises, and converted and disposed of the same, and of the bark which grew thereon, to his own use, contrary to the form and effect of the said lease, &c. Fifth. That after the interests of Hungerford had become vested in the plaintiff in manner aforesaid, the defendant failed and neglected to cultivate, manage and work said demised premises in a good farm-like manner; but on the contrary cultivated the same in a careless, negligent and unfarmerlike manner, contrary to the form and effect of the said lease, &c. The declaration then concluded with a general averment of the defendant's refusal and neglect to keep his said covenants, to the plaintiff's damage of twelve hundred dollars.

The defendant interposed twelve pleas, as follows: First.

*Non est factum.* Second. To the first breach assigned in the declaration; that the defendant did cultivate, sow, and raise each year after the execution of the lease, according to the terms thereof, forty acres of wheat, &c. concluding to the country. Third. To the first breach, certain matters in avoidance, upon which the replication took issue, and upon which no question of law arose. Fourth. To the second breach; that the defendant did not in the fall of the year 1845, raise the quantity of six hundred bushels of wheat on said premises, concluding to the country. Fifth. To the second breach; that after the execution of said lease by and between the defendant and Hungerford, he the said Hungerford afterwards and after the defendant had sowed and put in on said premises, in the fall of 1844, a certain portion thereof to wheat, to wit, forty acres thereof, viz. on the 25th day of March, 1845, assigned and transferred the lease to the plaintiff; concluding with a verification. Sixth. To the third breach; denying the matters alledged in this breach, and concluding to the country. Seventh. To the fourth breach; that the defendant did not at any time after the 25th day of March, 1845, cut down and carry away any standing wood and timber on said premises, or the bark that grew thereon, for any purpose, except for fencing or fire wood; concluding to the country. Eighth. To the fifth breach; taking issue on the matters stated in this breach, concluding to the country. Ninth. To the whole declaration; that the defendant had in all things well and truly kept, fulfilled and performed all and singular the covenants, agreements and conditions in the said lease on his part to be kept, fulfilled and performed, concluding to the country. Tenth. To the whole declaration; that after Hungerford sold and conveyed his interest in the premises and in the lease, to the plaintiff, viz. on the 26th day of March, 1845, the plaintiff sold and conveyed the premises, and his interest in the lease, to Sanford J. Smith and that since that time the plaintiff has not been, nor is now interested in the subject matter of the lease. Eleventh. To the second breach; that after Hungerford conveyed and assigned his interest in the demised premises and lease as stated in the declaration, the plain-

tiff sold, assigned and transferred his interest in and to the said lease, and the rights thereby reserved, to Sanford J. Smith, who afterwards, viz. on the 19th day of March, 1846, made application to one of the judges of the Monroe county courts, under the second subdivision of section 28 of article 2, title 10, chapter 3d of the revised statutes, for the removal of the defendant from the possession of said premises, and that such proceedings were thereupon had that the defendant, on the day and year last aforesaid, was removed, ejected, and put out of the possession of the demised premises, and had ever since been kept out, &c. concluding with a verification. Twelfth. To the second breach; that the plaintiff never designated to the defendant the flouring mill in the city of Rochester, to which he would have his portion of the wheat, harvested in 1845, delivered; concluding with a verification.

To the defendant's third plea, the plaintiff replied, taking issue, and concluding to the country. To the fourth plea, the plaintiff demurred, assigning for causes of demurrer, 1st. That the plea put in issue the quantity of wheat, when the quantity was not material, except as to damages. 2d. That the plea did not deny that the defendant raised some wheat, nor that he sold and converted to his own use the half belonging to the plaintiff.

To the fifth plea the plaintiff demurred, assigning for cause, that said plea admitted that the defendant converted to his own use all the wheat mentioned in the declaration, and gave no excuse therefor.

To the seventh plea the plaintiff demurred, assigning for cause, that the defendant did not deny that he cut standing timber on said premises for purposes other than fencing; but alledged that he did not carry it away, which was immaterial.

To the ninth plea, the plaintiff demurred, assigning for cause, 1st. That said plea tendered an issue of law and not of fact. 2d. That it did not show how the defendant performed his covenants, or the facts which constituted such performance.

To the tenth plea, the plaintiff replied, that the several breaches of the covenants of the defendant alledged in the declaration, accrued after the conveyance of the said premises, and

Beach *v.* Barons.

the assignment of the said lease to the plaintiff by said Hungerford, and prior to the coveyance of said premises and the assignment of said lease by the plaintiff to said Sanford J. Smith, as in said plea alledged, concluding with a verification.

To the eleventh plea, the plaintiff replied in like manner as to the tenth plea. To the twelfth plea, the plaintiff demurred, assigning for cause, that the plea admitted the sale and conversion of the plaintiff's half of said wheat by the defendant, and offered nothing in justification thereof.

The defendant joined in the demurrers to his 4th, 5th, 7th, 9th and 12th pleas. To the replication to the tenth plea, the defendant demurred, assigning for cause, 1st. That the said replication was no answer to the plea. 2d. That the replication showed that the plaintiff had no title. 3d. That the plaintiff had no cause of action, so far as the breach in question was concerned. 4th. That the plaintiff had no interest in the lease, at the commencement of the suit. 5th. That the replication was uncertain in the statement of the time when the plaintiff acquired his title and interest in the lease, and did not state particularly when the plaintiff assigned and conveyed the lease and the premises to Smith.

To the replication to the eleventh plea, the defendant demurred, assigning the like causes as for the demurrer to the replication to the tenth plea. The plaintiff joined in the demurrers to the replications to the tenth and eleventh pleas. The demurrers were argued by

*H. R. Selden*, for the plaintiff.

*H. Gay*, for the defendant.

*By the Court*, WELLES, P. J. I. The first demurrer presented in the case, is by the plaintiff, to the defendant's fourth plea; which plea is to the second breach assigned in the declaration. The defendant covenanted to sow and raise 40 acres of wheat each year, during the continuance of the lease, and to deliver one half, after the same was harvested, to Hungerford,

or his attorney, by the first of October, in each year, at one of the flouring mills in Rochester, to be designated by Hungerford. Hungerford conveyed the premises, and assigned the lease to the plaintiff, March 26th, 1845. The second breach avers, that in the fall of 1845, the defendant harvested, threshed and cleaned, a large quantity of wheat, raised on the demised premises, to wit, 600 bushels, and did not deliver the same to Hungerford, or his attorney, or to the plaintiff or his attorney, by the first of October of that year, at one of the flouring mills, &c. but sold and converted and disposed of the whole of said wheat, to his own use. The fourth plea is, that the defendant did not in the fall of the year 1845, raise the quantity of 600 bushels of wheat on said premises. The essence of the breach is, that the defendant sold and converted to his own use, *the whole* of the wheat harvested in the season of 1845, and neglected to deliver any part of it. I do not think the plea meets the breach. It merely puts in issue the quantity of wheat harvested in that year, which is immaterial as respects the breach to which the plea is an answer; and can only become material upon a question of damages. It admits, by not denying the fact, that some wheat was raised and harvested, which might have been 599 bushels, and the plea still be true. A charge that he raised and harvested, and converted to his own use, 600 bushels, is not answered by saying that although he did convert to his own use the 599 bushels, yet that was all he raised that year. But the defendant contends that the second breach is not well assigned, for several reasons. Those which merit notice are, that it exceeds the terms of the covenant, in claiming the whole 600 bushels of wheat; whereas the plaintiff could at most claim only one half; and that it is not alledged that a place was designated at which to deliver the wheat, or that the defendant was requested to deliver it. With respect to the first of these reasons, it is sufficient to say, that although the breach alledges the non-delivery of the whole 600 bushels, yet its point is, that the defendant sold and converted, and disposed of *the whole*. This is substantially an allegation of the conversion of the plaintiff's part. And a plea denying that, or furnishing some

Beach *v.* Barons.

other legal answer, it seems to me, might have been easily drawn. If the breach was bad in point of form only, the defendant should have demurred specially, instead of pleading over. And second, if the defendant sold and converted, and disposed of the plaintiff's share of the wheat, it was unnecessary for the plaintiff either to demand it or designate a place for its delivery. If the defendant had the right, under the contract, to deliver an equal quantity of other wheat, and was in fact ready and willing to deliver it, upon notice of a place where, according to the contract, the fact should have been pleaded.

II. The next demurrer in order is by the plaintiff to the defendant's fifth plea, which is also to the second breach assigned in the declaration. The covenant to which the second breach relates is not collateral; but annexed to and runs with the land. Upon the conveyance of the premises and the assignment of the lease to the plaintiff, he can maintain his action for the sale and conversion of the wheat which was cut and harvested afterwards. Hungerford's right to the growing crops passed by the deed and assignment of the lease to his grantee and assignee. The only fact set up in this plea is, that after the wheat was sowed on the said premises, to wit, on the 25th day of March, 1845, Hungerford assigned the lease to the plaintiff. The assignment of the lease and conveyance of the premises, had been averred in the declaration, and was necessary to entitle the plaintiff to recover. The repetition of it in the plea is no answer to the breach assigned.

III. The next demurrer is by the plaintiff to the defendant's seventh plea; which is to the fourth breach assigned. The seventh plea I think is bad, for the reasons assigned as a cause of demurrer; to wit, that it does not deny that the defendant cut standing timber; but denies that he cut and carried it away. If he had cut the timber and had not carried it away, the covenant would have been broken, and still the plea would have been true. The breach covers both the cutting and carrying away. The plea denies but one, and is clearly insufficient.

IV. The next demurrer is to the defendant's ninth plea; which is to the whole declaration. The plea is, that the defend-

ant has in all things well and truly kept, fulfilled and performed all and singular the covenants, agreements and conditions in the said lease, &c. This is manifestly bad, for the reasons stated as causes of demurrer; and does not require further notice.

V. The remaining demurrer interposed by the plaintiff, is to the defendant's twelfth plea; which is also to the whole declaration. The twelfth plea is also bad, for the causes of demurrer assigned; to wit, that it admits the sale and conversion of the plaintiff's half of the wheat, and offers nothing in justification. If he had kept the wheat, he would not have been liable until the plaintiff had designated the mill, &c. After he had sold and disposed of it, it would have been idle for the plaintiff to make the designation. It may be added, that this plea entirely fails to answer the first, third, fourth and fifth breaches. The breaches not answered, are to be deemed as admitted by the plea; which, being to the whole declaration, should contain matter which would be an answer to all the breaches assigned.

The remaining demurrers are by the defendant, to the plaintiff's replication to the defendant's tenth and eleventh pleas.

VI. The tenth plea is to the whole declaration; and is, that Hungerford sold and conveyed his interest in the demised premises and in the lease, to the plaintiff, to wit, on the 26th day of March, 1845; that the plaintiff, afterwards, to wit, on the day and year last aforesaid, sold and conveyed said premises, and his interest in the lease, to Sanford J. Smith; and that since then the plaintiff has not been interested in the subject matter of the lease. To this plea the plaintiff replies that the several breaches of the covenants of the defendant, alledged and set forth in the declaration, occurred after the conveyance of the said demised premises and the assignment of said lease to the plaintiff by Hungerford, and prior to the conveyance to Smith.

Upon the demurrer to this replication the defendant's counsel has made several points, as follows: 1. That the replication is no answer to the plea; for the reasons that if the covenants run with the land, the plaintiff has no action for their breach; and

Beach *v.* Barons.

if collateral, he cannot recover in his own name; and that the plea shows that he had passed his title and interest in all the covenants, and has none left.

It is to be observed that the several breaches assigned in the declaration are in the nature of distinct counts; and a plea to the whole declaration must contain matter which will be a legal answer to all the breaches. If a replication to such plea is good, as it respects either of the breaches assigned, although it may not be a good answer to the plea, so far as the plea assumes to answer other breaches, the replication will nevertheless be upheld on demurrer. In the case supposed, the plea is to the whole action; and if the replication shows the action can be sustained, in respect to any breach which is well assigned, the plea as an answer to the whole declaration is destroyed. If, therefore, the replication under consideration fortifies and supports either one of the five breaches assigned in the declaration, as against the matter of the plea, it is good. It is the same thing in this respect as if the plea was to a single breach, and the replication was good to the plea as an answer to that one breach; and in testing the validity of the replication, the plaintiff has the right to select the breach to which he will apply the plea, provided that be necessary in order to sustain the replication. In this case, it cannot be denied that the covenant not to cut timber, upon which the fourth breach is assigned, is a covenant running with the land, whatever may be said in that respect of the other covenants upon which breaches are assigned. The right of the plaintiff to sustain an action for a breach of a covenant of that description, depends upon the question whether he was the lessor, or the assignee of the lessor, at the time the breach was committed. The lessor, or person standing in his place—the landlord at the time the covenant is broken—must bring the action. By the common law, no one else can sue, in his own name. The declaration in the present case states the fact of the assignment of the lease, and the conveyance of the premises by Hungerford, the original lessor, to the plaintiff, on the 26th day of March, 1845; and the fourth breach alledges that the timber was cut by the defendant after that assignment

Beach *v.* Barons.

and conveyance. The plea reiterates the fact of the assignment, &c. to the plaintiff; and states, further, that afterwards, and on the same day, the plaintiff sold and conveyed to Smith. Now if the cutting of the timber took place after the assignment by Hungerford to the plaintiff, and before the assignment by the latter to Smith, the plaintiff would be the individual to bring the action. Certainly no one else could. Hungerford could not, because he had parted with all interest in the lease and in the land; and Smith could not, because he had acquired none, at the time of the breach of the covenant in question. The replication sets up this important fact—and that was all that was necessary to be alledged—that the several breaches accrued between the conveyance and assignment by Hungerford to the plaintiff, and the conveyance and assignment by the latter to Smith; thus showing, that it was while he, the plaintiff, was the owner of the premises and lease, as grantee and assignee of Hungerford, that the breach occurred; and thus removing the obstacle interposed by the plea. 2. It is also contended that the replication is uncertain; in not showing the particular time when the plaintiff acquired his title, and in not stating the time when he conveyed and assigned to Smith. Neither of these statements was necessary in the replication. The former had been distinctly and particularly averred in the declaration, and the latter in the plea. All that was necessary for the replication to show, and all that it assumes to show, was that the breaches occurred between the two events.

VII. The remaining demurrer involves precisely the same questions as the last, and should be disposed of in the same manner.

Judgment should be entered for the plaintiff on all the demurrers, with liberty to the defendant to amend his fourth, fifth, seventh, ninth and twelfth pleas, and to rejoin to the plaintiff's replications to the tenth and eleventh pleas, on payment of costs.

Judgment accordingly.

[MONROE GENERAL TERM, September 5, 1850. *Welles, Johnson* and *Selden,* Justices.]