WILLIS L. BENEDICT, APPELLANT, v. ABRAHAM WILLIAMS, RESPONDENT.

48 123
145a 561

*Sale of a horse*   *a person who obtained it by false and fraudulent pretenses — a purchaser in good faith acquires a valid title*

This action was brought to recover the possession of a horse which the defendant had, by exchange of horses, obtained from one Weider, who had obtained it from the plaintiff in exchange for a stolen horse, which was shortly thereafter taken from the plaintiff by the owner thereof. Upon the trial it appeared that Weider represented to the plaintiff that he was the owner of the stolen horse, and that the defendant was present when Weider made the exchange, and on the same day traded a horse owned by him with Weider for the plaintiff's horse;

the defendant testifying that he paid Weider ten dollars as boot money, and traded in good faith; that he did not know that the horse had been stolen, and had no reason to suppose that Weider was not an honest man.

*Held,* that if the defendant's testimony was true, he was a *bona fide* purchaser for value of the horse, and took title to it.

*Mowrey* v. *Walsh* (8 Cowen, 238) followed ; *Andrew* v. *Dieterich* (14 Wend., 31), overruled,

That as the burden of proving that he was a *bona fide* purchaser rested upon the defendant, and as in this case this fact depended wholly upon his testimony, the question should have been submitted to the jury, and that the court erred in directing a verdict in his favor.

APPEAL from a judgment in favor of the defendant entered on a verdict rendered at the Niagara Circuit, and from an order denying a motion for a new trial made upon the minutes of the justice presiding at the trial.

The action was replevin, brought to recover the possession of a horse which the defendant had, by exchange of horses, obtained from one Weider, who had stolen a horse and traded it with the plaintiff for the horse in question. The owner of the stolen horse shortly after took it from the plaintiff; the latter then demanded of the defendant the horse which he had so traded with Weider, and on the failure of the defendant to deliver it up brought this action. It appeared that Weider represented to the plaintiff that he was the owner of the stolen horse; that the defendant was present when Weider made the exchange with the plaintiff, and on the same day traded a horse with Weider for it. The court directed a verdict for the defendant.

*E. C. Hart,* for the appellant.

*David Millar,* for the respondent.

BRADLEY, J.:

The plaintiff was the owner of the horse in question when he made the exchange of it for the stolen horse with Weider. The latter obtained from the plaintiff the possession of the horse by the aid of false and fraudulent pretenses, which rendered the act larceny within the meaning of the statute. (Penal Code, § 528.) And for that reason it is contended on the part of the plaintiff that the defendant could not, and did not, obtain any title to the horse by his exchange with Weider for it. The offense committed by Weider in taking the horse which he let the plaintiff have was

larceny at common law. And the title of the owner of that horse could not, therefore, be defeated, but he could follow and reclaim it wherever found, although the horse may have reached the possession of a *bona fide* purchaser. This rule of protection of title is applicable to property feloniously taken, as that term was understood at common law. Felony was there defined as an offense which occasioned the total forfeiture of lands or goods, or both. (4 Bl. Com., 95.) In this State the definition of felony is also found in the punishment which may be inflicted, and embraces within that term all offenses punishable by imprisonment in State prison. (Id., § 5.) Such was the prior statute (2 R. S., 702, § 30), and many statutory offenses come within the definition. The means by which Weider obtained the horse of the plaintiff was not a crime at common law (*People* v. *Babcock*, 7 Johns., 201), but it is within the class of offenses made felonies by the Revised Statutes. And prior to the Penal Code it was commonly known by the designation of obtaining property by false pretenses. The question whether such offense had the character and effect of a common law felony in its relation to the title to property involved, so as to defeat the right of a purchaser in good faith to take title from the fraudulent vendee was before the courts, and the weight of authority is that it did not, and that such a purchaser could take title as against the defrauded vendor.

This question did not arise in *People* v. *Lyon* (99 N. Y., 210). The learned justice who delivered the opinion of the court in *Mowrey* v. *Walsh* (8 Cow., 238), which arose before the Revised Statutes, also delivered the opinion in *Andrew* v. *Dieterich* (14 Wend., 31), and in the latter case held that by making the offense a felony the statute had given to it the effect of a common-law crime of that grade, and, therefore, title could not be taken from the fraudulent vendee by a purchaser in good faith. The doctrine of the Mowrey case has since been treated as unchanged in that respect by the statute, and the Andrew case has not been followed. (*Peabody* v. *Fenton*, 3 Barb. Ch., 451; *Malcom* v. *Loveridge*, 13 Barb., 372; *Fassett* v. *Smith*, 23 N. Y., 252.) The definition of the term larceny has now been broadened so as to take within it the offenses formerly known as false pretenses and embezzlement. And as between them and the common-law offense of larceny a

distinction remains which must be observed in the presentation by indictment. (*People* v. *Dumar*, 106 N. Y., 502.) And we think the change exists only in the definition and does not go to the legal effect, except so far as it is produced by the terms of the statute. And that, as relates to those offenses which have been given the names of larceny by the statute, the consequences in respect to the property taken continue the same as they were before. The principle upon which the distinction in that respect rested was that larceny at common law was the feloniously taking property, which was without the consent of the owner, while the obtaining it by false pretenses was produced by the consent and delivery of it by the owner to the fraudulent vendee, and when so delivered, with the intent at the time being to part with the title and invest it in the latter, the effect of a common law larceny was not given to it so as to defeat the title of a *bona fide* purchaser for value. (*Zink* v. *People*, 77 N. Y., 114.) The same reason for this rule exists now as before the application of the extended definition.

And if the defendant was a purchaser in good faith of the horse from Weider, he took title. The burden was upon him to establish that relation to protect his title as against the plaintiff, who presumptively had the right to reclaim the property by reason of the fraud by which the possession was obtained from him. (*Devoe* v. *Brandt*, 53 N. Y., 462; *Stevens* v. *Brennan*, 79 id., 254, 258; *Barnard* v. *Campbell*, 58 id., 73.) The evidence of the transaction between Weider and the defendant is mainly in the testimony of the latter, who says that he declined to trade with him for the horse he let plaintiff have because it was too heavy for his use. He was present when the exchange of horses was made with the plaintiff, and he says that he shortly after traded a horse with Weider for the one in question, and paid him ten dollars as boot money, that he traded in good faith, did not know the horse for which plaintiff exchanged had been stolen, and had no reason to suppose that Weider was not an honest man. Upon this state of facts the conclusion would seem to necessarily follow that the defendant was a *bona fide* purchaser for value of the horse in question, and, therefore, took title to it. It does not appear that any person other than the parties to the transaction was present at the time the defendant and Weider exchanged horses.

That they made such trade is somewhat corroborated by the fact that they exchanged possession of horses. · So far as the fact in any essential respect depended wholly upon the evidence of the defendant, its determination involved the question of his credibility by reason of his relation to and interest in the action. And for that reason, in view of the circumstances, the question whether the defendant was a purchaser in good faith of the horse was one of fact and should have been submitted to the jury. The remark made by the court upon the trial that there was no question about that, we think did not conclude the plaintiff or charge him with the assumption that no such question was in the case. It was not addressed to plaintiff's counsel, and he may have treated it as the view of the court to which he was not necessarily then called upon to reply, although he may properly have done so.

It is also contended on the part of the plaintiff that the jury were permitted to find that the trade between Weider and the defendant ·had been rescinded by the latter, and for that reason they may have found for the plaintiff. If that trade had in fact been rescinded, there was nothing in the way of the plaintiff's recovery, because upon the existence of the purchase by the defendant in good faith of the horse depended his defense. But if the defendant had in fact paid Weider ten dollars boot money in the trade with him, there is no opportunity upon the evidence to find a rescission which aided the plaintiff, because upon his part the evidence tended only to prove that the defendant promised to let the plaintiff have the horse if he could obtain and hold the horse he had traded to Weider, and if plaintiff paid him the ten dollars. This was not paid or tendered to the defendant, and in any view that can be taken of the evidence, the arrangement existed only in an executory agreement, and, as such, could not have the effect to transfer to the plaintiff the legal title to the horse. If, however, the defendant did not in fact pay Weider ten dollars or any sum as boot money, and actually took possession of, the horse he had let him have, with the intent to rescind the trade between them and restore to the plaintiff the horse obtained from him, it may, we think, have been treated as a rescission. Because, although the defendant may not have been defrauded and have had no occasion to retake the horse into his possession for his own protection, he had purchased the product of Weider's fraud,

and the latter as against him could not make his fraud available to reclaim the horse and defeat the defendant's right, through that means, to make restoration to the plaintiff. No other question seems to require any consideration.

The judgment and order should be reversed, and a new trial granted, costs to abide the event.

BARKER, P. J., HAIGHT and DWIGHT, JJ., concurred.

Judgment and order reversed, and new trial ordered, costs to abide event.