# BURNSIDE v. WAND, Appellant.

### In Banc, December 10, 1902.

1. **Bonds:** LAW ELABORATELY REVIEWED. In the two concurring opinions in this case, the statute of 4 Anne, the Statute of William 3., the Missouri Statute of 1821, the present Missouri Statute and the Statute of New York from which the Missouri Statute was borrowed, the New Yorks decisions as authority in interpreting the same, the English decisions on the subject of annuity or installment bonds, the American and English law on the subject of bonds generally, are elaborately discussed, showing the evolution and present status of the law on the subject of bonds.

2. **Judgment:** NUNC PRO TUNC CORRECTION. A nunc pro tunc entry can only be employed to correct a clerical mistake or misprision of the clerk. It can never correct a mistake or oversight of the judge, nor be used to correct judicial errors, nor to render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render. [Per SHERWOOD, J.]

3. ————: ————: SUIT ON BOND: ALIMONY. In a suit on a bond for six thousand dollars, the condition of which was that the principal should pay to the obligee fifty dollars per month awarded her as alimony in a divorce proceeding against the principal, the prayer was for judgment for the penalty of the bond and execution for the sum of so much of the monthly installments as had then accrued, and the judge's memorandum to the clerk was, "Judgment for the plaintiff," and the judgment itself was that "the plaintiff recover of the defendant, $6,000, the penalty of the bond sued on, to be satisfied on the payment of" the sum of the monthly installment then due. This judgment was affirmed by the Court of Appeals, and thereupon plaintiff acknowledged "satisfaction of the judgment in open court," and then filed a motion in the appellate court to correct the judgment "so as to make it stand as security for future breaches and to provide in terms for execution for damages assessed," which court struck the motion from the files and directed plaintiff to apply to the circuit court for the relief sought. There was nothing in any paper, pleading, entry, memorandum, minute or record in the case, that indicates that plaintiff, up to the time of the entering of the judgment in the circuit court, expected or desired, or that the court intended, that the judgment should be for the penalty of the bond with execution for the amount then due, and that it should stand as security for future breaches with the right by *scire facias* to have execution for such future breaches. *Held,* that the judgment could not be so amended or corrected or

changed at a subsequent term, by a nunc pro tunc entry, as to stand as security for future breaches of the bond. [Per SHERWOOD, J.]

4. **Bonds of Alimony:** CHARACTER. A bond which has no condition or defeasance that it is to become void upon the payment of a sum less than the penalty, is not a penal bond. A bond for the payment of $6,000, in equal payments of fifty dollars a month, is not a penal bond. [Per SHERWOOD, J.]

5. ———: ———: RELEVANCY OF STATUTE. The statutes which provide for a bond with a "collateral condition other than the payment of money" have no bearing upon suits on bonds obligating the makers to pay a certain sum in equal monthly installments. [Per SHERWOOD, J.]

6. ———: ———: JUDGMENT AS AUTHORIZED BY STATUTE: MISPRISION OF CLERK. Where the statutes authorizing a judgment for the penalty of the bond, with execution for the damages then due, the judgment to stand as security for further breaches, have no application to bonds of the character of the one sued on, it can not be held that the clerk is chargeable with a clerical mistake or misprision because he did not enter up a judgment in accordance with these statutes. [Per SHERWOOD, J.]

7. **Penal Bonds:** EXTENT OF JUDGMENT: FUTURE BREACHES: STATUTES. Neither the Statute of 4 Anne, ch. 16, secs. 12 and 13, nor our statute, contemplates that in suits on penal bonds for the payment of money, that is, on bonds "in which there is a condition or defeasance by which the same is to become void on the payment of a lesser sum," a judgment shall ever be rendered for any more than the sum really due on the bond. Neither statute gives any authority to the court in suits upon such bonds to enter judgment for the penalty of the bonds, award an execution for the amount really due, and have the judgment for the penalty remain as security for further breaches. [Per SHERWOOD, J.]

8. **Bond In Suit:** JUDGMENT AUTHORIZED BY STATUTE: FUTURE BREACHES. Neither the Missouri statute nor any English statute, in a suit on a bond to pay the obligee "six thousand dollars," the condition of which was that if the principal should pay to the obligee the fifty dollars per month awarded her as alimony in a divorce proceeding against the principal, then the same was to be void, authorizes a judgment for the penalty of the bond, with an execution for the sum then really due, the judgment to stand as security for further breaches. Our statute authorizing such a judgment is not applicable to such a bond. That statute authorizes such a judgment only where the action is "upon a bond for the breach of a condition other than the payment of money" or is "prosecuted for any penal sum for the non-performance of any covenant or written agreement." [Per SHERWOOD, J.]

9. **Bonds Payable In Installments:** INAPPLICABILITY OF STATUTES: ALIMONY BONDS. Bonds securing the payment of annuities and bonds payable in installments do not come within the Statute of 4 Anne, ch. 16, secs. 12 and 13, or the Statute of 8 and 9 William III., ch. 11, sec. 8, for two reasons: first, they do not come within the Statute of William, because that statute applies only to bonds other than for the payment of money with a collateral condition, and such bonds are for the payment of money and not for the performance of a collateral condition; second, such bonds do not come within the Statute of Anne, because that statute applies only to penal bonds with a condition or defeasance making the bond void upon the payment of a lesser sum, and such bonds are not of that kind or nature, but call for the payment of a sum certain in installments. [Per SHERWOOD, J.]

10. ———: JUDGMENT: BOND NOT DISCHARGED. The failure to pay an installment specified in a bond obligating the obligor to pay so much money monthly or in other installments, does not forfeit the bond and thereby make the penalty the debt in law. [Per SHERWOOD, J.]

11. ———: PENAL BONDS: OLD AND MISSOURI RULE. The old rule that the obligee of a bond was entitled to judgment for the full penalty of the bond upon a breach of its conditions, when a less sum was actually due, has never prevailed in this State. [Per SHERWOOD, J.]

12. **Kinds of Bonds at Common Law:** AS AFFECTED BY MISSOURI STATUTE: JUDGMENT FOR FUTURE BREACHES. At common law, there were originally three kinds of bonds, a simple bond, a penal bond conditioned for the payment of money, and a penal bond conditioned to do a collateral thing. 1. A simple bond was an obligation whereby the obligor bound himself, his heirs, etc., to pay a certain sum of money to a named obligee, on demand or on a day certain. 2. A penal bond conditioned for the payment of money, was an obligation whereby the obligor bound himself to pay a certain sum of money, on a day certain, under penalty of a larger sum. 3. A penal bond conditioned to do a collateral thing was a bond promising to pay a named sum of money with a condition underwritten that if a stipulated collateral thing (something other than the payment of money) be done or omitted, the obligation shall be void. Under the Missouri statute, in a suit upon the third kind of bond, the judgment may be for the penalty of the bond, with execution for damages for past breaches, and the judgment stands as security for subsequent breaches, to be ascertained upon a *scire facias*. But no such judgment can be rendered on either of the other two kinds of bonds. [Per MARSHALL, J.]

13. ———: JUDGMENT FOR FURTHER BREACHES: AT COMMON LAW AND UNDER STATUTE OF ANNE. In a suit on a penal bond conditioned for the payment of money, being an obligation whereby the obligor

bound himself to pay a certain sum of money, on a day certain, under penalty of a larger sum, there was no such thing, either at common law or under the Statute of Anne, as a judgment for the penalty of the bond, with an assessment of damages for past breaches, with a further provision that the judgment should stand as security for further breaches. [Per MARSHALL, J.]

14. ———: SIMILARITY OF STATUTE OF ANNE AND MISSOURI STATUTE: JUDGMENTS: BREACHES ASSIGNABLE. The Statute of Anne provides for penal bonds conditioned for the payment of money, with a defeasance to become void upon the payment of a lesser sum, and provided for a judgment only for the amount actually due, and not for the penalty at all. And thus far it is similar to the Missouri statute. But the Missouri statute goes further, and contemplates that there may be several breaches of such a bond, and permits the assignment of as many breaches as have occurred at the time the action is begun. [Per MARSHALL, J.]

15. ———: MISSOURI BONDS: DISTINCTIONS: FURTHER BREACHES. The Missouri statute in respect to bonds conditioned for the payment of money is directly opposite to the statute in respect to bonds for the performance of a collateral thing other than the payment of money. Under the former, the judgment can be only for the amount due, and not for the penalty, and can not stand as security for further breaches. But under the latter, the judgment is for the penalty, the execution is issued for the damages then due, and the judgment stands as security for further breaches to be recovered by *scire facias.* [Per MARSHALL, J.]

16. ———: BOND IN SUIT: PAYMENT BY INSTALLMENTS. A bond to pay six thousand dollars to be void on the payment of fifty dollars per month, and nowhere providing that if any installment is not paid at the time specified the whole shall at once become due and payable, is not a penal bond with a collateral agreement, and hence the statute does not authorize a judgment thereon that shall be security for future breaches. [Per MARSHALL, J.]

17. Bonds: MISSOURI STATUTES: BORROWED FROM NEW YORK: FORCE OF N. Y. DECISIONS. The Missouri statutes are made up of two originally different acts, and were borrowed from New York, and hence the rule of law that when a statute is borrowed from another State the decisions of that State interpreting such statute are borrowed also, applies. [Per MARSHALL, J.]

18. ———: ENGLISH LAW OF ANNUITIES: ACTION OF COVENANT: JUDGMENT FOR FUTURE BREACHES. Under the English practice the grantee of an annuity had three remedies to collect arrears due, namely, an action of annuity, an action of debt, and an action of covenant. The action of debt is now held not to lie during the continuance of the annuity, and the action of annuity, by which the judgment

was for the arrears due and remained as security for future breaches, has been superseded by the action of covenant, under which the judgment does not remain as security for subsequent breaches, and hence the law of annuities in England affords no basis, in a suit on a bond covenanting for payment of the principal sum in monthly installments, for a judgment for further breaches. [Per MARSHALL, J.]

19. **Installment Bonds:** ENGLISH STATUTES: N. Y. STATUTES AUTHORITATIVE. Even though the English courts may have reached the conclusion that under the statutes of Anne and William 3, judgments on installment bonds may be made to stand for future breaches, yet their decisions are no authority in this State, because the Missouri statute is borrowed from New York, and along with it were borrowed the decisions of that court on the subject, which are to the effect that the judgment on an installment bond can not be made to stand for future breaches. [Per MARSHALL, J.]

20. ————: ————: ————: MISSOURI STATUTES OF 1821. The fact that Missouri in 1821 enacted the statutes of Anne and William, and repealed them in 1835 by the enactment of the present statute, does not impair the authority of the New York decisions construing a statute of New York exactly similar to our present statute, and from which our statute was borrowed, although there are English decisions construing in another way the statutes of Anne and William from which we borrowed our dissimilar statute of 1821. [Per MARSHALL, J.]

21. ————: NOT WITHIN MISSOURI STATUTES. Bonds payable in installments are not within the letter of the Missouri statute, they are not penal bonds at all, they have no penalty prescribed for the non-performance of any covenant or 'written agreement, they are not "conditioned other than for the payment of money," and hence in suits upon them there can be no judgment to stand as surety for further breaches. [Per MARSHALL, J.]

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

REVERSED.

*T. J. Rowe* for appellant.

(1) The judgment, as entered on April 29, 1898, is in accordance with the prayer of the plaintiff's petition and is the judgment rendered by the circuit court. (2) The judgment of April 29, 1898, having been satisfied, can not be altered or changed. (3) The judg-

ment of March 22, 1899, is without evidence to support it, and is not the judgment rendered by the circuit court on April 29, 1898. (4) The judgment appearing of record is presumptively the judgment of the court, and not an error of the clerk, and can not be set aside at a subsequent term, on the grounds of clerical mistake, or misprision, unless something in the record or the judge's docket, or the clerk's minutes or papers on file shows such mistake and in what it consists. Balkin v. Rhodes, 76 Mo. 643; Ross v. Ross, 83 Mo. 100. (5) The judgment as entered April 29, 1898, is erroneous, and the nunc pro tunc judgment entered March 22, 1899, is erroneous. Chap. 6, art. 1, R. S. 1899.

*Gilliam & Smith* for respondent.

(1) This court, when this State adopts a statute, or the controlling words of a statute, from a foreign country or another state, adopts the construction there put upon it. Skouten v. Wood, 57 Mo. 380; Skrainka v. Allen, 76 Mo. 784; Bank v. Hoffman, 74 Mo. App. 203; State v. Chandler, 132 Mo. 155. And our statute on penal bonds being substantially copied from 8 and 9 Will. III, c. 11, s. 8, and 4 Anne, c. 16, the English cases and authorities should have great weight in its interpretation. And we think their uniform interpretation is, that on a bond for payment of an annuity, or for payment of money in installments, judgment was given for the amount of the penalty, execution for amount due, and the judgment stood as security for further breaches. *Scire facias* is also used to suggest further breaches on a bond with condition, where a judgment has been obtained for some but not for all of the breaches, and to recover further installments where a judgment has been obtained for the penalty before all the installments are due. 19 Ency. Pl. and Pr., p. 290. *Scire facias* is also used to suggest further breaches on a bond with a condition, where a judgment has been obtained for some but not all of the breaches, and to recover further installments where a judgment

has been obtained for the penalty before all the installments are due. 1 Wms. Sound 58, note 1, 4 Md. 375; 2 Bouvier Dic., 961; Young v. Reynolds, 4 Md. 383. A bond for the payment of monthly alimony very closely resembles a bond for the payment of an annuity, which was early decided to be an action for the penalty for the non-performance of an agreement in writing. Collins v. Collins, 2 Burr. 826; Lee v. Lester, 18 L. J. N. S. C. P. 312, approved Collins v. Collins as late as 1849, and our statute must have been adopted in 1855 with that construction. Foster, Sci. Fa., 43, 44; Willoughby v. Swinton, 6 East 550; Van Sandau v. —— 1. B. and A. 214; Foster on Sci. Fa., star p. 44. This style of judgment has been followed in Rhode Island: Battey v. Holbrook, 11 Gray (Mass.) 212. In Massachusetts: Waldo v. Fobes, 1 Mass. 10. In Maryland: Young v. Reynolds, 4 Md. 575. In New York: Bowne v. Hallet, 1 Caines 517; Wood v. Wood, 3 Wend. 454. In Virginia: Thatcher & Herndon v. Taylor & Cochrane, 3 Munford 249. (2) The expression, "to be satisfied," etc., was not in the pleadings and was no part of the judgment proper. Freeman on Judgments (4 Ed.), sec. 2, holds that the award of execution is no part of a judgment, citing Kramer v. Rebman, 9 Ia. 114, Gregory v. Nelson, 41 Cal. 278. And anything recited in the judgment outside the issues made by the pleadings is superfluous and nugatory. Barnett v. Stearns, 33 Cal. 474. A court of law by its judgment declares the conclusion of the law upon the facts proved, and leaves the party to the proper process to enforce it. Kramer v. Rebman, 9 Ia. 114; Houck v. Cross, 67 Mo. 151. The clerk has no authority to enter judgment for any other sum than the verdict and statute call for. Robestelli v. Railroad, 34 Fed. 507. (3) The power of a court to order a *nunc pro tunc* entry of judgment is inherent, existing independently of statute. Chissom v. Barbour, 100 Ind. 1. If the clerk fails to enter the judgment, or enters an erroneous one, the court may, at a subsequent term, order the entry of the correct one, *nunc pro tunc*. Hyde v. Curling, 10 Mo. 359;

Turner v. Christy, 50 Mo. 145; Priest v. McMaster, 52 Mo. 60. Persons executing a bond for a loan of school moneys must be deemed to have a knowledge of the statutory requirements relating thereto. Montgomery Co. v. Auchley, 103 Mo. 507. An error by the clerk in making a memorandum at the foot of a judgment that the judgment bears ten per cent interest, may be corrected by the circuit court after appeal is determined. Fugate v. Glasscock, 7 Mo. 578. The court permitted an amendment of description of the land as given in the amended petition, and the judgment to make it conform to that contained in the original petition at the next term after the judgment and after an appeal. Harlan v. Moore, 132 Mo. 490; Black on Judgments, sec. 126; Henze v. Railroad, 71 Mo. 642; DeKalb Co. v. Hixon, 44 Mo. 342; Darrier v. Darrier, 58 Mo. 234. Case of interpolation by clerk corrected. Brusie v. Peck, 62 Hun 248. Century, vol. 30, col. 805; Petrie v. Trustees of Hamilton College, 92 Hun 81; Durning v. Burkhardt, 34 Wis. 585; Williams v. Hayes, 68 Wis. 248; Century, vol. 30, col. 806. A judgment may be amended so as to more clearly declare the effect of the verdict, even after it has been reviewed and affirmed by the Supreme Court. Moses v. Mfg. Co., 68 Ga. 241; Seeley v. Pelton, 63 Ill. 101; Beam v. Bridges, 111 N. C. 269; Conway v. Doy, 79 Ind. 318; Tunstall v. Schoenpfling, 63 Tenn. 43; Stevens' Exr's v. Lee, 70 Tex. 279; Railroad v. Johnson, 7 Wash. 97; Nell v. Dayton, 47 Minn. 257; Hill v. Hoover, 5 Wis. 386; State v. Town of Delafield, 69 Wis. 264; Springfield Lighting Co. v. Hobart, 68 S. W. 942. A judgment entered for the plaintiff for too small a sum, or for costs only, omitting the damages, through mistake of the clerk, may be amended on notice and motion at any time. Smith v. Myers, 5 Blackf. 223; Buker v. Lincoln, 56 Mass. 124; Hunt v. Grant, 19 Wend. 90; Smith v. Hood, 25 Pa. (1 Casey) 218; Doty v. Rigour, 9 Oh. St. 519; Patton v. Messey, 2 Hill (S. C.) 475; De Hymel v. Mfg. Co., 80 Tex. 493. No lapse of time will debar the court of the power to correct its records, when erroneously

made up, so as to make them speak the truth. Walton
v. Pearson, 85 N. C. 34. Where, by an error in a judg-
ment, caused by a mistake of the clerk, the party in
whose favor judgment is rendered, and who is not in
fault, loses part of the benefit of his judgment, if he
can not obtain relief otherwise, equity will assist him.
Partridge v. Harrow, 27 Ia. 96; Aldrich v. Maitland,
4 Mich. 205. A bond is merged in the judgment ob-
tained thereon. Scott v. Sanner's Heirs (29 Ky.), 6
J. J. Marsh 506; Grant v. Burgwyn, 88 N. C. 95; 30
Cent. Dig., sec. 1092. (4) Several notes or installments.
McDole v. McDole, 106 Ill. 452; Buckner v. Thompson,
11 Ill. 563; Brandagee v. Chamberlain, 2 Rob. 207;
Bank v. Nav. Co., 3 La. Ann. 294; Sparhawk v. Wills,
72 Mass. 163; Williams v. Kitchen, 40 Mo. App. 604;
Lorillard v. Clyde, 122 N. Y. 41; Blun v. Holitzer, 53
Ga. 82; Isaacs v. Davies, 68 Ga. 169; Epstein v. Greer,
85 Ind. 372; Orendorff v. Utz, 48 Md. 298 (bond);
Stone v. St. Louis Stamping Co., 155 Mass. 267; Weiler
v. Henarie, 15 Or. 28; Ins. Co. v. Alger, 31 Pa. (7
Casey) 446; Howe v. Harding, 84 Tex. 74; Ahl v. Ahl,
60 Md. 207 (bond); Bldg. Soc. v. Lawton, 49 Minn.
362; Doescher v. Doescher, 61 Minn. 326; Outen
v. Mitchels (4 Ky.), 1 Bibb. 360 (bond); McDougal
v. Downey, 45 Cal. 165; Wehrly v. Morfoot, 103
Ill. 183; Armfield v. Nash, 31 Miss. 361; West v.
Moser; 49 Mo. App. 201; Sterner v. Gower, 3 Watts
and S. 136; Bliss v. Weil, 14 Wis. 35.

SHERWOOD, J.—This case had its origin in the
following circumstances now about to be related:

Elizabeth Burnside obtained a divorce from her
husband, James Burnside, in the circuit court of St.
Louis, on June 5, 1894, with an allowance of fifty dol-
lars a month for alimony and maintenance of herself
and children. Thereafter, on March 29, 1895, the court,
on plaintiff's motion, ordered the defendant in the di-
vorce case to give bond with surety, "in the sum of six
thousand dollars within ten days, conditioned for the
payment of the monthly allowance of fifty dollars a

month to plaintiff," and in default thereof, the decree to be a lien on his real estate. Pursuant to this order, on April 18, 1895, James Burnside, as principal, and Thomas Wand, the defendant herein, as surety, executed a bond to Elizabeth Burnside, containing the following recitals and conditions:

"Now, therefore, be it known that we, the undersigned, James Burnside, as principal, and Thomas Wand, as surety, are held and firmly bound unto the said Elizabeth J. Burnside in the sum of six thousand dollars for the payment of which, well and truly to be made, we do bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"The condition of this bond is such, however, that if the said James Burnside shall well and truly pay unto the said Elizabeth J. Burnside the said monthly allowance of fifty dollars a month to plaintiff mentioned in said order of March 29, 1895, in accordance with the terms and provisions of the above recited decree of June 5, 1894, then this bond to be null and void; otherwise to remain in full force and effect."

James Burnside failed to pay the fifty dollars a month, but became in arrears on account thereof as follows: fifteen dollars of the fifty dollars due on February 1, 1897, and fifty dollars a month from March 1, 1897, to September 1, 1897, aggregating three hundred and seventy-five dollars. Thereupon, on September 9, 1897, Elizabeth Burnside brought suit on said bond against Thomas Wand alleging the facts here stated and assigning as a breach of said bond the failure to make the payments above specified. The prayer of the petition is as follows: "Wherefore, plaintiff prays judgment against defendant, Thomas Wand, for six thousand dollars, the penalty of said bond, and that execution issue for the sum of three hundred and sixty-five dollars, with interest, as damages aforesaid, and the costs."

James Burnside was not made a party to that suit, nor does it appear from the record before us whatever

became of him. That case was tried without a jury, and on April 20, 1898, the court handed down the following memorandum of its decision: "E. J. Burnside v. Thomas Wand, judgment for plaintiff." Thereupon, counsel for Mrs. Burnside gave to the clerk of the court, the following memorandum, which the clerk filed with the papers in the case: "In the circuit court of the city of St. Louis, April 20, 1898. Eliza J. Burnside v. Thomas Wand. I compute amount due plaintiff at three hundred, eighty-four and fifty-hundredths dollars ($384.50)."

Thereupon the clerk made the following entry in his minute book: "1898. April 20. Judgment for plaintiff for $6,000, penalty of bond; damages $384.50."

The clerk then entered the following judgment upon the records:

"E. J. Burnside,  
    v.     }  Judgment for plaintiff.  
Thomas Wand,  

"St. Louis, April 20, 1898.

"Now, at this day, this cause coming on for hearing come the parties hereto, by their respective attorneys, and submit said cause to the court upon the pleading and evidence adduced, and the court having heard and duly considered the same, and being fully advised of and concerning the premises, doth find that the plaintiff is entitled to recover of the defendant the sum of six thousand dollars, the penalty of the bond sued on, with a further judgment of three hundred and eighty-four and fifty one-hundredths dollars damages. It is therefore considered and adjudged by the court, that the plaintiff recover of the defendant the sum of six thousand dollars, the penalty of the bond sued on, to be satisfied upon the payment of the sum of $384.50 damages, together with her costs and charges in this behalf expended, and that execution issue therefor."

This judgment was set aside and re-entered, in the same terms, on April 29, 1898.

The defendant appealed from this judgment to the St. Louis Court of Appeals, and that court affirmed

the judgment of the lower court on December 13, 1898. The defendant thereupon paid to the plaintiff's attorney the amount of the judgment, with interest, aggregating $425.45, and on January 3, 1899, the plaintiff acknowledged in open court, satisfaction of the judgment, and her attorney filed the following memorandum: "Satisfaction of judgment acknowledged in open court,"

On February 14, 1899, plaintiff, after notice to defendant, filed a motion in the St. Louis Court of Appeals, to correct the judgment of the circuit court "so as to make said judgment to stand as security for future breaches and to provide in terms for execution for damages assessed, in conformity with the provisions of chapter 22, article 1, of Revised Statutes of Missouri, 1889." The Court of Appeals struck the motion from the files and directed the plaintiff to apply to the circuit court for relief.

The plaintiff, then on February 27, 1899, filed the following motion in the circuit court, giving the defendant notice thereof:

"Now comes the plaintiff, by her attorney, and moves the court to correct by nunc pro tunc order the informality in entry of judgment in this cause, so that it shall not express the debt to be discharged upon the payment of damages, but shall express the amount of damages awarded, with provision for execution therefor, and a further provision that the judgment for the penalty of the bond, six thousand dollars, shall stand as security for further breaches of said bond, in conformity with chapter 22, article 1, of Revised Statutes of Missouri of 1889, and particularly with sections 869 and 871 of said article."

Upon a hearing, the circuit court, on March 22, 1899, sustained the motion and amended the judgment as requested, nunc pro tunc, as of April 29, 1898, and defendant, after saving proper exceptions, and taking proper steps, appealed, and this is the matter now before this court for adjudication. It also appears that on December 8, 1899, on motion of plaintiff, upon notice

to defendant, the circuit court set aside the satisfaction entered on January 3, 1899.

1. A nunc pro tunc judgment, at a subsequent term, can only be made upon evidence furnished by the papers and files in the cause, or something of record, or in the clerk's minute book, or on the judge's docket. In other words, a nunc pro tunc entry can only be employed to correct a clerical mistake or misprision of the clerk. It can never correct a mistake or oversight of the judge, nor be used to correct judicial errors, nor to render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render. [Freeman on Judgts. (3 Ed.), sec. 69; Ross v. Ross 83 Mo. 100; Bank v. Allen, 68 Mo. 474; State v. Jeffors, 64 Mo. 376; Belkin v. Rhodes, 76 Mo. 652; Wooldridge v. Quinn, 70 Mo. 371; Gamble v. Daugherty, 71 Mo. 599; Railroad v. Holschlag, 144 Mo. l. c. 256; Young v. Young, 165 Mo. 624.]

Tested by these rules, there is nothing in this record which authorizes or justifies an amendment of the judgment, nunc pro tunc. The judgment as entered by the clerk is strictly in conformity to the prayer of the petition, the memorandum of the decision of the court, the memorandum filed with the clerk by the plaintiff's counsel, and with the entry on the minute book of the clerk. The petition, the memorandum for judgment filed by counsel, the entry by the clerk on the minute book and the judgment entered of record, all treated the bond as a penal bond for the payment of money, "in which there is a condition or defeasance, by which the same is to become void on the payment of a less sum." In other words, as such a bond as is contemplated and governed by sections 862, 863, 864 and 865, Revised Statutes 1889, and not as a bond with collateral condition, other than the payment of money, such as is contemplated and governed by sections 866 to 875, Revised Statutes 1889.

There was no mistake or misprision of the clerk in entering the judgment therefor. He entered exactly

the kind of a judgment asked for in her petition, and precisely the kind of a judgment and in the form, evidently contemplated by the court and the counsel. There is nothing in any paper, pleading, entry, memorandum, minute or record in the case that gives the faintest color to the present claim that the plaintiff thought, believed, expected or asked, or that the court intended, that the judgment should be for the penalty of the bond, with an execution for the amount then due, and that the judgment should stand as security for further breaches, and that the plaintiff should have a right by scire facias to have executions for further breaches, as, or if, they occurred. That this is true, and that the plaintiff had no such idea or thought in mind, and that all the subsequent proceedings along those lines are a clear and palpable afterthought, is conclusively shown by the fact that immediately after collecting the judgment of April 29, 1898, of which she acknowledged satisfaction on January 3, 1899, the plaintiff on January 7, 1899, started a new suit upon the same bond against defendant to recover fifty dollars a month from October 1, 1897, to January 1, 1899, amounting to eight hundred dollars, and that she kept such suit pending until after March 22, 1899, when she procured the nunc pro tunc judgment here in question, and then she dismissed that suit. It will be noted that this new suit was instituted before the plaintiff applied to the Court of Appeals for a nunc pro tunc judgment on February 14, 1899.

The fact that this judgment now entered nunc pro tunc, was not the judgment asked or expected by the plaintiff or intended to be entered by the court, is thus conclusively established by the acts of the plaintiff and her counsel. And the institution of such second suit also indubitably proves that at that time counsel for plaintiff either did not know of the provisions of the statute whose aid he now invokes, permitting a judgment to be entered for the full penalty of the bond, with an execution for the damages then due, the judgment to stand as security for further breaches, or damages, if any, or else knowing thereof, he did not intend

a judgment to be entered in this case in conformity therewith, and in either event, the fact stands out prominently, that the judgment actually entered by the clerk was not the result of a clerical mistake or misprision of the clerk, and hence it can not be amended or corrected or changed at a subsequent term, by a nunc pro tunc entry such as was done in this case.

2.   In the whole proceeding in this case, from its inception to the satisfaction of the judgment, the plaintiff treated the bond as a penal bond—such a bond as is contemplated by sections 862 to 865, Revised Statutes 1889.· That is, a penal bond containing a condition or defeasance that it shall become void upon the payment of a lesser sum.   But this bond is in no sense a penal bond, with such a condition or defeasance.   It is a bond for the payment of money, that is, for the payment of six thousand dollars, in equal payments of fifty dollars a month.   There is no condition or defeasance by or under which the six thousand dollars, which is nowhere spoken of as a penalty, shall become satisfied by the payment of a lesser sum.   The bond in question therefore is not a penal bond at all, and it is not such a bond as is within the contemplation of sections 862 to 865, Revised Statutes 1889, which sections are in some respects the same as the act of 4 Anne, ch. 16, secs. XII and XIII, as will be more fully demonstrated hereafter.

3.·  Neither is the bond in question such a bond as is contemplated by sections 866 to 875, Revised Statutes 1889, which is in some respects the same as the act of 8 and 9 William III, ch. XI, sec. VIII.   The bond contemplated and governed by these sections and this act is a bond with a "collateral condition, other than the payment of money."   In other words, it is a bond for the faithful performance of a covenant or agreement other than the payment of money.   These sections of the statute have therefore no bearing upon bonds or suits upon bonds like the bond in question.

4.   It is contended, however, that under chapter 22, article 1, Revised Statutes 1889, and particularly un-

Vol 170 mo—35.

der sections 869 and 871 thereof, the judgment of April 29, 1898, was a clerical mistake or misprision of the clerk, and that by virtue of those provisions of the statute the law required that the judgment should be entered for the penalty of the bond, with execution for the damages then due, the judgment to stand as security for further breaches, and that this being true, the clerk made a mistake in not entering the only kind of a judgment the law permitted in such a case, and, hence, that clerical mistake can be cured by a nunc pro tunc entry, and Railroad v. Mockbee, 63 Mo. 348, is relied upon as a case on all fours with the case at bar.

This is a misapplication of the case cited and a misconception of the statutory provision quoted.

The case of Railroad v. Mockbee, supra, was a suit to condemn land of defendant for a right of way for a railroad. Commissioners to assess the damages to the defendant were appointed and made a report, which found that the defendant would not be damaged by the taking. The defendant filed exceptions to the report. The court overruled the exceptions and ordered a judgment for the railroad company as prayed for in the petition. The clerk entered a judgment that the plaintiff take nothing by his action, and that defendant recover costs. It was held that: "This was not the judgment required and authorized by the law governing the case. When the objections were overruled, and the judgment given for the plaintiff, it should have been a judgment vesting the title in the company." The correction of the judgment by a nunc pro tunc order was therefore held proper. It is significantly said, however, "All this sufficiently appears of record and presented the requisite data to amend by."

But there is no data in this case to amend by, and the statutory provisions relied on do not authorize or require such a judgment as was entered by the nunc pro tunc order in this case, for sections 866 to 875, Revised Statutes 1889, have no application to bonds of the character of the bond in question here.

5. Chapter 22, article 1, Revised Statutes 1889, is,

in some respects, like the acts of 4 Anne and 8 and 9
William III, and in other respects there is a vast dif-
ference between the English statutes and ours.     Sec-
tions 862 to 865 relate to penal bonds with a condition
or defeasance making the bond void upon the payment
of a less sum.     The defendant is permitted to plead
payment of the principal sum and interest due by the
condition of the bond, before the commencement of the
action, although the payment was not strictly according
to such condition.     [Sec. 863.]     The defendant is also
permitted at any time before judgment rendered to pay
to the plaintiff or bring into court for the plaintiff's use
the principal sum and interest due on such bond, to-
gether with costs, "and thereupon such action shall be
discontinued."     [Sec. 864.]     If neither is done, that
is, if payment of the amount due on the penal bond is
not pleaded or proved, or if it is not tendered before
judgment, with interest and costs, and if the plaintiff
obtains judgment, "such judgment shall be rendered
for the sum really due, according to such condition with
interest and costs, and execution shall issue accord-
ingly."     [Sec. 865.]

It will be observed that nothing is here said about
a judgment for the penalty of the bond, with an execu-
tion for the damages then due, the judgment to remain
as security for further breaches.   But on the contrary,
the judgment is required to be for the sum really due
at the date of the judgment.

Now observe the provisions of the Statute of 4
Anne, ch. 16, secs. XII and XIII, which are as follows:

"XII.    And be it further enacted by the authority
aforesaid, that from and after the said first day of
Trinity Term, where any action of debt shall be brought
upon any single bill, or where action of debt or scire
facias, shall be brought upon any judgment, if the de-
fendant hath paid the money due upon such bill or judg-
ment, such payment shall and may be pleaded in bar of
such action or suit, and where an action of debt is
brought upon any bond which hath a condition or de-
feazance to make void the same upon payment of a les-

ser sum at day or place certain, if the obligor, his heirs, executors or administrators, have, before the action brought, paid to the obligee, his executors or administrators, the principal and interest due by the defeazance or condition of such bond, though such payment was not made strictly according to the condition or defeasance; yet it shall and may nevertheless be pleaded in bar of such action, and shall be as effectual a bar thereof, as if the money had been paid at the day and place according to the condition or defeazance, and had been so pleaded."

"XIII. And be it further enacted by the authority aforesaid, that if at any time, pending an action upon any such bond with a penalty, the defendant shall bring into the court where the action shall be depending, all the principal money, and interest due on such bond, and also all such costs as have been expended in any suit or suits in law or equity upon such bond, the said money so brought in shall be deemed and taken to be in full satisfaction and discharge of the said bond, and the court shall and may give judgment to discharge every such defendant of and from the same accordingly."

On the other hand, sections 866 to 875, Revised Statutes 1889, relate to bonds with a "collateral condition other than the payment of money," and provide that if the plaintiff recovers, the verdict assessing the damages shall be entered on the record, and that a judgment shall be rendered for the penalty of the bond or for the penal sum forfeited and with a further judgment that the plaintiff have execution for the damages so assessed. [Sec. 869.] The judgment rendered for the penalty of the bond or for the penal sum forfeited is required by section 871 to remain as security for further breaches. And when further breaches occur the plaintiff is given authority by scire facias to suggest further breaches and like proceedings are then had as were originally taken, and execution awarded for such further damages. [Sec. 872.]

Now note the provisions of the Act of 8 and 9 Wil-

liam III, ch. XI, sec. VIII, which are as follows:

"VIII.   And be it further enacted, that in all actions, which from and after the said five and twentieth day of March, one thousand and six hundred ninety and seven, shall be commenced or prosecuted in any of his majesty's courts of record, upon any bond or bonds, or on any penal sum, for non-performance of any covenants or agreements in any indenture, deed or writing contained, the plaintiff or plaintiffs may assign as many breaches as he or they shall think fit, and the jury, upon trial of such action or actions, shall and may assess, not only such damages and costs of suit as have heretofore been usually done in such cases, but also damages of such of the said breaches so to be assigned, as the plaintiff upon the trial of the issues shall prove to have been broken, and that the like judgment shall be entered on such verdict as heretofore hath been usually done in such like actions; and if judgment shall be given for the plaintiff on a demurrer, or by confession, or *nihil dicit*, the plaintiff upon the roll may suggest as many breaches of the covenants and agreements as he shall think fit, upon which shall issue a writ to the sheriff of that county where the action shall be brought, to summon a jury to appear before the justices or justice of assize, or *nisi prius,* of that county, to enquire of the truth of every one of those breaches, and to assess the damages that the plaintiff shall have sustained thereby; in which writ it shall be commanded to the said justices or justice of assize, or *nisi prius,* that he or they shall make return thereof to the court from whence the same shall issue, at the time in such writ mentioned; and in case the defendant or defendants, after such judgment entered, and before any execution executed, shall pay unto the court where the action shall be brought, to the use of the plaintiff or plaintiffs, or his or their executors or administrators, such damages so to be assessed by reason of all or any of the breaches of such covenants, together with the costs of suit, a stay of execution of the said judgment shall be entered upon record; or if by reason of an execution executed, the plaintiff or plain-

tiffs, or his or their executors or administrators, shall be fully paid or satisfied all such damages so to be assessed, together with his or their costs of suit, and all reasonable charges and expenses for executing the said execution, the body, lands, or goods of the defendant, shall be thereupon forthwith discharged from the said execution, which shall likewise be entered upon record; but notwithstanding in each case such judgment shall remain, continue, and be, as a further security to answer to the plaintiff or plaintiffs, and his or their executors or administrators, such damages as shall or may be sustained for further breach of any covenant or covenants in the same indenture, deed, or writing contained, upon which the plaintiff or plaintiffs may have a *scire facias* upon the said judgment against the defendant or against his heirs, terre-tenants, or his executors or administrators, suggesting other breaches, of the said covenants or agreements, and to summon him or them respectively to show cause why execution shall not be had or awarded upon the said judgment, upon which there shall be the like proceeding as was in the action of debt upon the said bond or obligation, for assessing of damages upon trial of issues joined upon such breaches, or inquiry thereof upon a writ to be awarded in manner as aforesaid; and that upon payment or satisfaction in manner as aforesaid, of such future damages, costs, and charges, as aforesaid, all further proceedings on the said judgment are again to be stayed, and so *toties quoties,* and the defendant, his body, lands, or goods, shall be discharged out of execution, as aforesaid.''

The act of 8 and 9 William III, was passed in 1697, and the act of 4 Anne was passed in 1707.

For a proper understanding and appreciation of the force and reason of these respective English statutes, a short retrospect of the law in England prior to their enactment is both necessary and pertinent.

The old English law is dramatically shown by Shakespeare, when he pictures Shylock demanding his pound of flesh. That is, in England, before the adoption of the statutes quoted, in cases upon a penal bond

or a bond providing for a certain penalty in case a certain debt or sum of money was not paid by a certain date, the plaintiff was entitled to recover the whole penalty, and not simply the debt or sum of money due. The recovery of a larger amount than the debt or sum of money due was authorized as a penalty for non-payment of the debt or money promptly when due. Hence, Shylock's demand for the penalty and not for the debt or money due.

The practice obtained in England, in every sort of action, to permit the defendant to bring into court the principal, with interest and costs, demanded, and thereupon to obtain a stay of further proceedings against him. [Tidd's Prac., marg. p. 541.] The learned author just cited, says (p. 542): "In debt on *bond,* conditioned for the payment of a less sum, it was usual for the courts, even before the Statutes of 4 Anne, c. 16, section 13, to relieve the defendant against the penalty of the bond, on payment of the principal, interest and costs; but then the whole penalty *must have been* brought into court, and when the plaintiff was satisfied, the defendant might have taken what remained."

The author then points out that under the Statute of Anne, the defendant must bring in the whole principal and interest, due on the bond, with the costs, and upon his doing so, "the court shall and may give judgment to discharge every such defendant of and from the same accordingly."

The difference between the practice of the courts and the rule of action prescribed by this statute is, the courts required the defendant to bring into court the full amount of the penalty with interest and costs, paid the plaintiff what was really due him and returned the balance, if any, of the fund so paid into court to the defendant. Whereas, under the Statute of Anne, the defendant was only required to pay into court the sum actually due on the bond (not the whole penalty) with interest and costs, and then if the plaintiff did not accept such payment into court (like our tender by payment into court) and prosecuted his case further in

hopes of recovering a larger sum than the amount tendered, he did so at his peril. If he accepted the tender, the defendant was entitled to be discharged without the payment or the depositing in court of the whole penalty. Our statutes (sec. 864, R. S. 1889), like the Statute of Anne, permits the defendant to tender or pay into court the amount really due on the bond (not the penalty) with interest and costs, and thereupon directs that the action shall be discontinued.

Neither the Statute of Anne nor our statute contemplates that in suits on penal bonds for the payment of money, that is, bonds "in which there is a condition or defeazance by which the same is to become void on the payment of a less sum," any judgment shall ever be rendered for any more than the sum really due on the bond. Neither statute gives any authority to the court in suits upon such bonds to enter a judgment for the penalty of the bond, award an execution for the amount really due, and have the judgment for the penalty remain as security for further payment. But, on the contrary, the English statute expressly declares that upon the defendant bringing in the sum really due, with interest and costs, he shall be discharged, and our statute provides that upon the payment into court of the sum really due, with interest and costs, *"thereupon such action shall be discontinued."* [Sec. 864.] In addition, instead of our statute allowing a judgment for the whole penalty and an execution for the sum really due, the judgment to stand as further security, it is expressly provided by section 865, Revised Statutes 1889: "If judgment be rendered on any such bond, such judgment shall be rendered for the sum really due, according to such condition, with interest and costs, and execution shall issue thereon accordingly."

The Statute of Anne abolished and superseded the practice of courts requiring the whole penalty, with interest and costs, to be paid into court, the plaintiff to be allowed what was really due him and the balance to be returned to the defendant, and in lieu thereof permitted the defendant to pay into court the amount really due,

according to the condition of the bond, with interest and costs, and thereupon to be discharged. And our statute is practically the same.

It is necessary to say, however, that our statute does not include all that is embraced in the Statute of Anne. In this: the Statute of Anne, like our statute, covers bonds for a penalty, with a condition or defeasance by which they shall become void upon the payment of a lesser sum. But the Statute of Anne also covers actions for debt brought upon any single bill, or upon any judgment, in which case the defendant may discharge himself by paying into court the full amount of the debt, bond or judgment, with interest and costs. Whereas our statute contains no such provision. In fact, such bonds are not treated by our courts as penal bonds, nor as falling within the same class as penal bonds, but they are treated like any other agreement to pay money where the plaintiff is only entitled to recover what he can prove was actually due at the time the suit was brought. In other words, such a bond is properly a *simplex obligatio.* Whereas a bond for the payment of money upon a condition is denominated a double or conditional bond. [4 Am. and Eng. Enc. Law (2 Ed.), p. 620-621, notes.]

Thus it will be seen that neither our statute nor the Statute of Anne authorizes a judgment for the penalty of a penal bond for the payment of money, with a defeasance that it shall become void upon the payment of a lesser sum, with an award of an execution for the amount then due, the judgment to stand as security for further breaches, etc. But that it is only in cases of penal bonds, other than for the payment of money, with a collateral condition, that the judgment is entered for the penalty, with an execution for the damages then due, the judgment to stand as security for further breaches, and that our statute in this regard is like the Statute of 8 and 9 William III. It will be noted that the Statute of 8 and 9 William III. was in existence in England for ten years before the Statute of Anne was passed, but it was never thought during that time or afterwards,

that it had any application to penal bonds for the payment of money, with a condition or defeasance.

It is too plain, therefore, to admit of argument, or serious discussion, that our statute does not give any authority for entering a judgment in the case at bar for the penalty of the bond, with an execution for the sum really due, the judgment to stand as security for further breaches. No such judgment was asked or contemplated by court or counsel when the suit was brought, or at any stage of its progress through the court, nor when the judgment was rendered, or when the satisfaction was entered, and no such judgment is permitted by our statute or by any English statute. This being so, it is not true that the circuit court has any power to enter such judgment by a nunc tunc order, on the theory that the statute provided that such should be the form and character of the judgment, and that it was therefore a mere mistake or misprision of the clerk not to enter such a judgment.

No such judgment is permissible under our statute, and, therefore, no such judgment could legally be entered by the court in the first instance, and, *a fortiori*, not by a nunc pro tunc entry,

The plaintiff admits that the bond in question in this case is a bond for the payment of money, and not a penal bond for the payment of a penalty with a condition or defeasance that it shall become void upon the payment of a lesser sum, and not a bond, other than for the payment of money, with a collateral condition. In other words, the plaintiff admits that this bond is not such a bond as is defined or provided for by our statute.

But the plaintiff contends that this is a bond for the payment of money in *installments* or like a bond for the payment of an *annuity* and that therefore upon failure to pay any installment when due, the whole bond became due, and that she was entitled to a judgment for the whole amount of the bond, with an execution for the installments then due, the judgment to remain as security for the future installments. In support of this

contention, the plaintiff relies upon the practice of the English courts.

Tidd's Practice, marg. p. 543, says: "It was formerly holden, that this statute" [he refers to the Statute of Anne] "did not extend to an action of debt on bond, conditioned for the payment of an *annuity*, or of money by installments. But it is now settled, upon the equity of the statute, that in such an action, when the defendant is solvent, the courts will stay the proceedings, on payment of the arrears and costs, and giving judgment as a security for future payments, with a stay of execution till they become due . . . . And if an installment of an annuity secured by bond, be not paid on that day, the bond is forfeited, and the penalty is the debt in law."

In other words, in the earlier English cases construing the Statute of Anne (Ex Parte Groome, 1 Atkyns 118; Land v. Harris, 1 Strange's Rep. 515) such a bond was held not to be within the words or meaning of the contemplation of the Statute of Anne, while in the later English case, such bonds while held not to be within the letter of the statute were said to be within the equity of the statute; whatever that may mean. An analysis of the cases cited by the author in support of the text, and the course of procedure adopted in those cases is interesting and pertinent. Thus, in Bridges v. Williamson, 2 Strange's Rep. 814, the condition of the bond was to pay forty pounds by five pounds per annum, and the defendant had leave to bring the arrears of five pounds per annum into court, under the Statute of Anne. But it will be observed that there was no judgment for the whole amount of the bond, nor was the judgment ordered to stand as further security, etc., the judgment was for the sum then actually due. Massen v. Touchet, 2 Blackstone's Rep. 706, was an action of debt on a bond conditioned to pay six hundred pounds and interest in three years, in installments of fifteen pounds half-yearly, and six hundred and fifteen pounds at the end of the term, which had not arrived, when the suit was brought. The obligor failed to pay the interest when due, and the obligee brought suit for the whole

amount of the bond. The obligor moved to· stay proceedings on payment of the interest due, but the court ordered judgment entered for the whole amount, with stay of execution on payment of the interest due. It will be observed that neither the Statute of Anne nor that of 8 and 9 William III. was referred to nor relied on as authority for such a judgment, but that the proceeding was one of pure judicial invention, and was unlike even the practice that obtained before the passage of those acts, because the whole amount was not required to be paid into court at once, the plaintiff to be satisfied once for all and the balance, if any·(in such cases there would be no balance), returned to the defendant, as was the old practice in cases on penal bonds.

Rogers, Assignee, v. Stanford, Assignee, Barnes' Rep. p. 288, was an action for rent on covenant broken. Under a rule of court, the defendant paid the rent into court. Nothing further was done during the life of the plaintiff. After his death, his executor moved for leave to take the money out of court for the rent that had accrued up to the testator's death, with the accrued costs. The defendant did not object to the money for the rent being taken out of court, but did object to the costs being taxed against him. It was shown that if the executor was not allowed to do this he could bring another suit for the rent that accrued between the institution of this suit and the testator's death, and in such other suit he would recover costs. Thereupon, the defendant withdrew his objection and judgment was rendered by consent, for the executor, that the money in court be applied to the rent that was due up to the time of the death, with costs, and that no action should thereafter be brought by the executor for the same cause of action for which the former action was brought. It will be noted that neither the Statute of Anne, nor of 8 and 9 William III., nor the old English practice that obtained before the passage of those statutes, nor the rule of procedure adopted in Massen v. Touchet, supra, of entering a judgment for the whole amount, issuing an execution for the rent then due, and letting the judgment

stand as a security for the future installments of rent,. was observed, referred to or followed, but that a new procedure was adopted by consent, of entering judgment only for the amount that was really due at the death of the testator.

Van Sandau v. ———, 1 Barn. & Ald. 214, was a suit on a penal bond for ten thousand pounds conditioned for the payment of five thousand two hundred and fifty pounds on September 29, 1820, with interest in the meantime payable half-yearly. The obligor did not pay the interest due on September 29, 1817. He had left bills of exchange with his agent to have discounted and applied to the payment of the interest; and had left London two days before the interest fell due and did not return until the end of October. His agent failed to pay the interest. The obligee sued for the penalty of the bond. The obligor applied to king's bench for a rule to stay proceedings, on the payment of the interest due and costs. Lord ELLENBOROUGH, C. J., said: "The defendant in this case has been guilty of a slip which amounts to a breach of the condition of the bond; he has thereby given to the plaintiff the advantage of obtaining a judgment for the whole penalty. To what extent the court may feel disposed to relieve the defendant against the consequences of such a judgment, is another question; but we are of opinion, at present, that the plaintiff is entitled to proceed in this action, and that the judgment must stand as a security. Rule absolute."

This decision was rendered in 1817, and the Statute of Anne was passed in 1705. That statute was not noticed by the court or counsel, but counsel for the plaintiff cited 8 and 9 William III. and argued that under it the defendant was entitled to pay the interest into court and that the judgment must stand as security, etc. And it is plain that the court fell into the error of applying that statute to the case, and it is equally plain that that statute, which related only to bonds other than for payment of money, with a collateral condition, had no possible application to the bond in

suit in that case, because it was a penal bond with a condition or defeasance making it void upon the payment of the lesser sum, which was directly such a bond as was contemplated, provided. for and governed by the Statute of Anne, and not by that of 8 and 9 William III., and the defendant was clearly entitled under the Statute of Anne to be discharged upon the payment of the lesser sum with interest and costs and the court erred in holding that a judgment could be recovered for the whole penalty, the judgment to stand as security, etc.

Murry v. Earl of Stair, 2 Barn. & Cress. 82, decided in 1823, was a suit on a penal bond for four thousand pounds, conditioned to become void upon the payment of two thousand pounds, within six months after the death of the Earl of Stair. Default was made, and suit brought for the full penalty. The court held that it was a *post obit* bond; that it was not within the Statute of 8 and 9 William III., but was controlled by the Statute of Anne, and that the defendant was entitled to be discharged upon tendering or paying into court the money due (the lesser sum), with interest and costs, and that the plaintiff was not entitled to recover the full penalty of the bond because he was cut off by the Statute of Anne from enforcing a claim for the whole penalty.

This case practically overruled the Van Sandau case decided by Lord ELLENBOROUGH, and is undoubtedly the correct construction to place upon the Statute of Anne, and of William, and supports and justifies the criticism herein made of the decision in the Van Sandau case. Therefore, notwithstanding loose and unguarded statements of text-writers and of some courts, that bonds securing the payment of annuities or bonds payable in installments, fall within the Statute of 8 and 9 William III. and the equally illogical statements of other courts that such bonds do not fall within the Statute of William, but do come within the Statute of Anne, and the likewise incomprehensible statement of some text-writers that while such bonds do not come

within the letter of either of those statutes, still they do come within the equity of the Statute of Anne, whatever may be meant by that statement, it is perfectly manifest to the analytical and logical mind that such bonds do not come within either of those statutes (and do not come within our statute) for the following reasons: first, they do not come within the Statute of William because that statute applies only to bonds other than for the payment of money with a collateral condition, and such bonds are for the payment of money and not for the performance of a collateral condition; second, such bonds do not come within the Statute of Anne, because that statute applies only to penal bonds with a condition or defeasance making the bond void upon the payment of a lesser sum, and such bonds are not of that kind or nature at all, but call for the payment of a sum certain in installments. Therefore, such bonds are not regulated by statute at all. This being true, there was no law which required that the judgment should be for the penalty with execution for the damages then due, the judgment to stand as security, etc., and, hence, there was no mistake or misprision of the clerk in not so entering the judgment which the court had power to correct by a nunc pro tunc entry or for manifest irregularity.

The practices of the earlier English cases of entering a judgment for the penalty, with execution to issue for the damages then due, the judgment to stand as security, etc., that obtained before the passage of the Statutes of William and Anne, never obtained in Missouri, for the reason that it was abrogated by those statutes in England, and such a practice is not within the letter or spirit of our statute relating to penal bonds for the payment of money.

It is easy to understand why the English courts construe such bonds to be governed by the old English practice, before the passage of the Statutes of William and Anne, and why those courts having invented that old rule of having the judgment entered for the full penalty with execution for the damages due, the judg-

ment to stand as security, should have disagreed as to whether bonds securing annuities or payable in installments came within the one or the other of those statutes. Such judgments were creations of the court, designed and fitted to relieve against the rigors of the old law that a breach of a bond entitled the obligee to his "pound of flesh." But we have never had any such harsh rule, and therefore our courts have never been put to the necessity to invent such protective remedies. Our law is opposed to forfeitures wherever it is possible. It has ever been considered unconscionable to demand the full penalty where a lesser sum is only really due. Hence, it has ever been the law in our State that in suits on penal bonds the obligor can discharge himself by paying what is really due, with interest and costs, and thereupon the cause is discontinued. There is no more reason for entering a judgment for the whole amount in a suit on a bond securing an annuity or payable in installments, where default occurs in the payment of one or more installments, than there is for entering judgment for the full amount of rent upon a lease for years when default occurs in the payment of a month's rent. With us, the failure to pay an installment does not forfeit the bond and thereby make the penalty the debt in law, as is the theory upon which some of the English courts and some of the American courts have attempted to justify their judgments for the whole penalty in cases upon bonds securing the payment of an annuity or payable in installments.

The premises considered, it follows that the circuit court erred in entering the nunc pro tunc order in this case, and likewise in setting aside the satisfaction of the judgment, and its judgment is therefore reversed, but the cause will not, for reasons already given, be remanded.

All concur.

## SEPARATE OPINION.

MARSHALL, J.—This is an appeal from a judgment of the circuit court of St. Louis, amending, by a

nunc pro tunc order, dated March 22, 1899, a judgment theretofore entered by that court on April 29, 1898.

It is said that the circuit court had power to enter the nunc pro tunc order upon either one of two grounds, to-wit: first, because the original judgment was a misprision of the clerk and was not the judgment the court ordered to be entered, and that there was evidence furnished by the papers and files in the case, the record proper, or the clerk's minute book or the judge's docket to show that this was true, and also to show what judgment the court did order to be entered; and, second, that if the first ground aforesaid be not true, still the statutes of this State prescribe the character, nature and form of the judgment that shall be entered in cases of the character of the case at bar.

Of course, all lawyers will admit that the conclusions stated are correct, if the premises are true. The question therefore is, are the premises true?

Is it a fact that there is any evidence furnished by the papers and files in the cause, or by the record, or by the clerk's minute book, or by the judge's docket showing that the judgment of April 29, 1898, was a misprision of the clerk, and likewise showing that the judgment as amended by the nunc pro tunc order of March 22, 1899, was the judgment the court originally ordered to be entered?

A short review of the evidence furnished as the rule above stated requires, will easily solve the first contention.    On June 5, 1894, Mrs. Burnside obtained a decree of divorce from her husband with an allowance of fifty dollars a month alimony.    He did not keep up the payments, so on March 29, 1895, the court ordered him to give bond "in the sum of six thousand dollars, within ten days, conditioned for the payment of the monthly allowance of fifty dollars a month to plaintiff." In pursuance to this order he gave a bond, with the defendant herein, Thomas Wand, as surety in the sum of six thousand dollars, conditioned as follows; "The condition of this bond is such, however, that if the said

Vol 170 mo—36.

James Burnside shall well and truly pay unto the said Elizabeth J. Burnside the said monthly allowance of fifty dollars a month to plaintiff mentioned in said order of March 29, 1895, in accordance with the terms and provisions of the above recited decree of June 5, 1894, then this bond to be null and void, otherwise to remain in full force and effect." Mr. Burnside failed to make the monthly payments, and on September 1, 1897, he was in arrears therefor in the sum of three hundred and seventy-five dollars. Mrs. Burnside then, on September 9, 1897, brought suit against Mr. Burnside and the surety, Wand, the defendant herein, on the bond. She recited these facts in the petition, and prayed for a judgment "for six thousand dollars, the penalty of said bond, and that execution issue for the sum of three hundred and seventy-five dollars, with interest, as damages aforesaid, and the costs." On April 20, 1898, the court ordered a judgment for the plaintiff, the memorandum given to the clerk by the judge being: "E. J. Burnside v. Thomas Wand. Judgment for plaintiff." The clerk then made this entry in his minute book: "1898. April 20. Judgment for plaintiff for $6,000, penalty of bond; damages, $384.50." And the clerk on the same day entered a judgment "that the plaintiff recover of the defendant the sum of six thousand dollars, the penalty of the bond sued on, to be satisfied upon the payment of the sum of $384.50 damages, together with her costs and charges in this behalf expended, and that execution issue therefor." This judgment was set aside and entered again on April 29, 1898, and this is the judgment the court amended at a subsequent term by a nunc pro tunc order on March 22, 1899.

The defendant appealed from the original judgment, to the St. Louis Court of Appeals, where the judgment was affirmed, and the defendant paid the judgment, and the plaintiff entered satisfaction thereof. The plaintiff then on February 27, 1899, filed a motion to have the judgment amended nunc pro tunc "so that it shall not express the debt to be discharged upon the payment of the damages, but shall express the amount

of damages awarded, with provision for execution therefor, and a further provision that the *penalty* of the bond, six thousand dollars, shall stand as security for further breaches of said bond, in conformity with chapter 22, article 1, of Revised Statutes of Missouri of 1889, and particularly with sections 869 and 871 of said article."

The court amended the judgment nunc pro tunc as requested, and entered a judgment finding "for the plaintiff the sum of six thousand dollars, *the penalty of the bond sued on,* and that the plaintiff hath sustained damages by reason of the breaches of said bond in the petition set forth in the sum of $384.50. It is therefore considered by the court that the plaintiff recover of the defendant the sum of six thousand dollars, *the penalty of the bond sued on,* which judgment shall stand for the damages assessed, and shall remain as a security for any damages that may be thereafter sustained by the further breach of any condition of such bond; together with the costs by plaintiff in this behalf expended; and it is further ordered and adjudged that the plaintiff have execution for the sum of $384.50, the damages by the court as assessed as aforesaid, together with costs."

I.

Upon such a state of facts no one can fairly or successfully contend that there is any legal data furnished by the papers and files in the case, or by anything of record, or by the clerk's minute book, or by the judge's docket, that convicts the clerk of any clerical error, mistake or misprision, or that, in the slightest degree even tends to show that the court did not order such a judgment as the clerk entered or that the court did order such a judgment to be entered as it afterwards entered by a nunc pro tunc entry.

This is so true that it amounts to a demonstration, as can be very easily shown. The petition treats the bond as a penal bond conditioned for the payment of money. The prayer of the petition is for a judgment

for six thousand dollars, *"the penalty of said bond,"* and that execution issue for $375, "as *damages* aforesaid."

The memorandum handed to the clerk by the judge was simply, "Judgment for plaintiff." What judgment? The judgment prayed for, of course. There was no hint by the judge that he intended or ordered any other kind of a judgment than one for six thousand dollars "the penalty of said bond," with execution for $375 "as damages aforesaid." The most powerful Roentgen ray can not discover any order for any other kind of a judgment. The most penetrating X-ray would fail to show, even in the mind of the counsel or the court, up to that time, any idea of entering any other kind of a judgment than that prayed for. The clerk did faithfully enter an order for such a judgment on his minutes and did enter the only kind of a judgment that the petition asked, and that the order of the court, read in the light of the petition, directed to be entered. The clerk, therefore did his duty, and was guilty of no clerical error, mistake or misprision. If there was any mistake in the judgment as originally entered, it was the mistake of counsel in asking for that kind of a judgment. There was no mistake of the judge; for he simply ordered such a judgment as the plaintiff asked. But if there was a mistake of the judge in ordering such a judgment to be entered, he had no power to correct that mistake by a nunc pro tunc entry, after the term at which the judgment was entered had expired.

It is therefore as clear as the noonday's sun that there is nothing in the papers or files of the case, or in the record, or in the minutes of the clerk, or on the docket of the judge that gives any color or countenance to the claim that the judgment of April 29, 1898, was a clerical error, mistake or misprision of the clerk or that the judgment so entered was not in truth and in fact the identical judgment the court ordered and intended to be entered.

Not only is this the fact as it appears by all the data in the case that it is legal or proper to refer to,

but that it is the fact is conclusively shown by the motion for a nunc pro tunc order itself. That motion is not based upon any idea or claim or pretense that the judgment was not the very judgment the court ordered to be entered. That motion may be searched, with a search warrant, and no intimation can be found therein that the pleader intended to charge that the judgment was a mistake or misprision of the clerk, or that the clerk did not enter the exact judgment the court ordered, or that the court ever intended to have any other kind of a judgment entered. The motion for nunc pro tunc entry is predicated solely upon the ground that the statute (sections 869 and 871) prescribes the nature, character and form of the judgment that must be entered in cases on bonds like this, and that the court erred in not ordering a judgment in conformity to those sections of the statute to be entered. Or otherwise stated, that no matter what kind of a judgment the plaintiff asked in his petition, or the court ordered to be entered, or the clerk actually entered, the law prescribed the proper judgment, and if that kind of a judgment was not asked, ordered or entered, still it was the absolute right of the plaintiff to ask, and the imperative duty of the court, to have the judgment so changed by a nunc pro tunc order as to make it such a judgment as the statute prescribed.

For these reasons it is worse than idle to devote any more time or attention to the first contention, for the question of clerical misprision, in not entering the judgment the court ordered, is not in this case at all, nor is there any foundation for such a contention under the record in this case.

## II.

The next question is, does the statute prescribe the nature of the judgment that must be entered upon bonds like the one in question here, and particularly does it require that the judgment entered nunc pro tunc, in this case, should have been originally entered?

A review of the law relating to bonds will easily answer this question. At common law there were originally three kinds of bonds, a simple bond, a penal bond conditioned for the payment of money, and a penal bond conditioned to do a collateral thing. A simple bond was an obligation whereby the obligor bound himself, his heirs, executors and administrators to pay a certain sum of money to a named obligee, on demand or on a day certain. [2 Blackstone's Com., 340.] The bond in question here is clearly not such a bond. A penal bond conditioned for the payment of money, was an obligation whereby the obligor bound himself to pay a certain sum of money, on a day certain, *under penalty of a larger sum,* usually, but not necessarily, double the principal. [2 Blackstone's Com., 340.] If the sum due was not paid exactly when and where due, the bond was considered forfeited and the penalty became the debt, and the obligee was entitled to recover not the sum actually due, but the penalty. Speaking of such bonds, that incomparable preceptor of the law, Prof. John B. Minor, in his Institutes, vol. 3, page 350, says:

"At common law, if the principal be not fully paid according to the stipulation, the penalty becomes the debt, for which the action is brought and judgment is recovered. Of course, therefore, it is at common law no answer to the whole action for the debtor to plead that after his default he paid the principal. Such payment is a discharge as far as it goes, but the penalty being then the debt, nothing less than the penalty can discharge the action, although, of course, any payment of less will be *pro tanto* a defense, and will reduce the amount for which judgment is to be given. [2 Bl. Com. 341; 2 Min. Insts. (4 Ed.), 832; Bac. Abr. Oblign. (F).]

"The hardship of regarding the penalty as the debt wherever the obligor made default in the payment of even the smallest part of the principal, intolerable as it appears to us, was ultimately relieved against in equity, but by very slow degrees. Chancery, from an early period, had given relief against penalties and forfeitures in a few cases, such as where the money was

paid but no acquittance taken, or an acquittance not under seal, or the acquittance was lost, and afterwards where the obligor was prevented by fraud or casualty from paying the money punctually; and finally, but not it seems until the reign of Charles I., in all cases of money bonds, however the default might have been brought about.    [1 Spence's Eq. Jurisd., 628 to 630.]

"In the progress of this amelioration by the court of chancery of the harsh exercise of the jurisdiction of the common-law courts, there took place, in the time of James I., a fierce conflict between Thomas EGERTON, Lord ELLESMERE, then lord chancellor, and Lord COKE, as to the power of the chancellor to interfere, by injunction, with an action at law, or with the judgment therein.   Lord COKE insisted that the suing out of a subpoena in chancery, thus to arrest the judgment, or obstruct the proceedings of a court of common law, subjected the parties, their attorneys, and all concerned, to the penalties of the formidable statutes of *praemunire* (or, as it should rather be, *praemoneri*, drawing the subject before a foreign jurisdiction, 4 Bl. Com., 103, and seq., 428) ; and he used all his influence with the grand jury to cause all the parties in what he considered a grievous infraction of the law of England to be indicted for that offense.   The strife was finally composed by the interposition of the king in council, who gladly availed himself of the occasion to exalt the royal prerogative, by deciding in favor of the chancellor, and to settle the question of jurisdiction in all time to come, ordered the royal decree to be enrolled in the court of chancery, accompanied by the declaration, that it 'appertained only to his princely office to judge over all judges, and to discern and determine such differences as at any time might arise between his several courts touching their jurisdictions, and the same to settle and determine as he in his princely wisdom should find to stand most with his honor.'   [2 Campb. Lives of Chancellors (Ld. Ellesmere), 210 and seq.; 1 Campb. Lives of Chief Justices (Ld. Coke), 282; 3 Bl. Com., 434-35; 2 Swanst. 22, n. (b) ; 2 Bac. Works, 489.]

"In 2 Swanst. 22 n. (b), is a summary of the argu-ment upon the authorities touching the question of the original jurisdiction of equity to enjoin judgments at law, drawn up by Mr. Hargrave; and in 2 Bac. Works, 489, is Lord BACON's account of the proceedings of the king's council upon that subject, and also upon that of *commendams*, in which Lord COKE shows to more ad-vantage than in his contest with Lord ELLESMERE about the enjoining of the judgments of the courts at law.

"Thus was settled the power of the chancery to in-tervene in fitting cases; but the precise extent of that power, that is, in what cases it should be exercised, was not determined, as has been said, until the next reign. Meanwhile, it appears that, even in the latter part of the reign of James I., after Lord ELLESMERE's death, and the unhappy fall of Lord BACON, whilst the great seal was in the custody of Bishop Williams, not only was it not agreed that penalties should be relieved against, except in rare cases of fraud or casualty, but it was considered the better opinion that they should not be, for which Lord ELLESMERE's authority was cited. This is discovered from an interesting MS. in the British Museum, printed by Mr. Hargrave, being an address touching 'The Abuses and Remedies of Chan-cery, by Mr. George Norburie, and presented unto the Lord Keeper.' In that address, Mr. Norburie dis-courses as follows of the

" 'MATTERS PROPERLY RELIEVABLE IN CHANCERY.'

" 'Touching the affirmative part, what matters are relievable in the chancery, I have heard they must be one of these kinds, viz.: Matters of fraud, trust, ex-tremity, or casualty, or else not lightly to be dealt in here. For almost all other besides these do arise from the remiss, careless, and negligent dealings of men, who, having precipitated themselves into some great in-conveniences, come with open mouths into the chancery, seeking relief; wherein how far they shall be thought fit to be holpen, I will not presume to determine. Doubt-

less many wise men do think it better to smart in some measure for their follies, than that their adversarys, haply honester men than themselves, should be vext here with a tedious and expensive suit, the court so much troubled as it is, and the course of honest, careful and precise dealings between man and man should be inverted. For to what purpose are bonds made with penalties, leases with forfeitures, *nomine poenae,* and clauses of re-entry, if the willful violators shall be exempt from all punishments, and who will take care to pay either debt or rent? I have heard the late honorable and worthy chancellor, Lord ELLESMERE, say, that he would not relieve any that forfeited a bond, unless it were in case of extremity, or that he would make it appear that by some accidental means he was occasioned thereunto; and if he did help any, the party here complaining should pay all the defendant's charges, both at the common law and in chancery (if he were able), if there was cause. Whereas of late much lenity has been used to all debtors, so that many, after four or five years' suit and charges in this court, were glad to go away with their principal, without either cost or damages.' [Hargrave's Law Tracts, 431.]

"But when, in the time of Charles I., the equity of redemption, after forfeiture of a mortgaged estate, was established, it would have been inconsistent not to have extended the same doctrine to the forfeiture of the penalty in a money bond, as between the parties beneficially interested in the performance of the condition. The principle in either case was the same, namely, that the substance of the transaction was to secure the payment of the money within a reasonable time, so that if the debt were discharged within a reasonable time, with lawful interest, although the very letter of the engagement was not observed, yet the real substance of it was achieved; and it was not equitable, nor consistent with good conscience, that the creditor should demand or be allowed to have more, agreeably to that maxim of the court, that 'Equity regards the substance, and not the form of things.' [1 Spence's Eq. Jurisp., 629-30.]

"The student is desired to observe, that in these cases where equity, either formerly or at present, interposes by injunction to prevent what it deems an iniquitous advantage from being taken of a judgment or other proceeding in a court of common law, it does not address itself to the common law court, over which it is acknowledged to have no control; but it directs its mandate to the parties, and, if need be, to the executive officers of the law, and prohibits those from suing out, and these from executing, any process in pursuance of the judgment, etc.

"After the lapse of somewhat over half a century, the relief which at first was given dubiously, even in equity, was deemed so obviously to conform to substantial justice that it was directed, by Statute 4 and 5 Anne, c. 16 (A. D. 1707), to be administered in the courts of law, the provision being that, although suit should be brought and judgment given as before for the penalty, yet the judgment should be accompanied by an entry upon the record that it should be discharged by the payment of the principal sum and interest. And this statute is found in our Code in almost the same terms. [2 Bl. Com., 341; Bac. Abd. Oblig. (F); V. C. 1873, ch. 173, secs. 16, 17, V. C. 1887, ch. 166, secs. 3393, 3394.] And as a corollary to this enactment, it is provided that 'in any action of debt [meaning, doubtless, on a penal bill, or bond with condition, for such a plea was always proper on a single bill] the defendant may plead payment of the debt (or of so much as is due by the condition) before action brought' that is, although after default made by the debtor. [V. C. 1873, ch. 168, sec. 1; V. C. 1887, ch. 160, sec. 3295.]

"As at common law the penalty becomes the debt upon the obligor's default, so by that law the penalty usually limits the recovery, as it still does in respect to the surety. Equity, however, upon any application by the obligor for its aid (because he who asks equity must do equity), will compel the payment of principal and interest, though the aggregate exceed the penalty. [Bac. Abr. Oblig. (A.)] In Virginia the courts of law

habitually allow interest to be recovered in full, although, together with the principal, it may exceed the penalty, the excess being recovered as damages. [Tennant's Exr. v. Gray, 5 Munf. 494; Baker v. Morris's Admr., 10 Leigh 284; Tazewell v. Saunders, 13 Grat. 354.]''

It will be at once observed that in cases of penal bonds for the payment of money where there is only a single sum due or secured, there can be but one breach of the bond, and hence, there never was in the law such a thing in suits upon such bonds, as a judgment for the *penalty* of the bond, with an assessment of the *damages* for the past breaches, with a further provision that the judgment should stand as security for further breaches. Under such bonds there could be only one breach, and the only question there ever was in the law was, whether the recovery should be for the sum actually due or for the whole penalty. This being true, the judgment could not stand as security for further breaches, for there could be no further breaches.

It is of such bonds that the Statute of Anne treated, and because there can be but one breach of such bonds, the statute provides that judgment shall be entered, not for the *penalty,* but for the sum actually due, and this also explains why neither at common law, nor under the Statute of Anne, was there ever a provision that the judgment should stand as security for further breaches.

Our statute (R. S. 1899, secs. 464 to 467) is in most respects like the Statute of Anne. It is like the Statute of Anne in that it relates to penal bonds conditioned for the payment of money, with a defeasance to become void upon the payment of a lesser sum, and in that it permits a judgment only for the amount actually due, and not for the penalty at all. But it is unlike the Statute of Anne in that it contemplates that there may be several breaches of the bond, and permits the assignment of as many breaches as have occurred at the time the action is begun. But our statute in respect to bonds conditioned for the payment of money is directly oppo-

site to the statute in respect to bonds for the performance of a collateral thing other than the payment of money (secs. 468 to 477), in this, that under the former the judgment is only for the amount due, and not for the penalty, nor that the judgment should stand as security for further breaches, while under the latter the judgment is for the penalty, the execution is issued for the damages, and the judgment stands as security for further breaches, to be recovered by *scire facias*.

It is to be observed that the bond in this case has been treated by the plaintiff and the lower court as a penal bond conditioned for the payment of money. The petition prays for a judgment for the penalty of six thousand dollars, "*the penalty of the bond,* and that execution issue for the sum of three hundred and seventy-five dollars, with interest, *as damages*"—(nothing is said about the judgment standing as security for further breaches). The original judgment was for six thousand dollars, "*the penalty of the bond sued on,* to be satisfied upon the payment of the sum of $384.50 damages."

The only difference between the petition and the judgment, therefore, is that the petition asked that execution issue for the damages, while the judgment was that it be satisfied upon the payment of the damages. In neither, however, was there any idea expressed or involved that the judgment was to stand as security for further breaches, nor could there be such a thing if this bond was a penal bond conditioned for the payment of money, nor if the bond was such a bond as is covered by our statute or the Statute of Anne.

The third kind of a bond was a penal bond conditioned to do a collateral thing. Of such bonds Prof. Minor, in his Institutes, vol. 3, p. 355, says:

"A bond with condition to do a collateral thing is a bond promising to pay a named sum of money, with a condition underwritten, that if a stipulated collateral thing (something other than the payment of money) be done or omitted, the obligation shall be void.

"In this case also, as in the case of the bond with condition to pay money, the common law holds the whole penalty to be forfeited if the condition be not observed in every particular, however trivial; but the court of equity having interposed, upon the same principle as before, to compel the obligee to accept a suitable compensation in damages in satisfaction of the bond, it was provided by Statute 8 and 9 William III., c. 11 (A. D. 1697), in terms which the Virginia statute substantially reproduces, that the plaintiff may assign as many breaches of the condition as he shall think fit, and a jury shall ascertain the damages sustained by reason of such breaches, and judgment shall be entered for the penalty, to be discharged by the payment of the damages so ascertained, and such further sums as may be afterwards assessed, or be found due upon a *scire facias* assigning a further breach. [V. C. 1873, ch. 173, sec. 17; V. C. 1887, ch. 166, sec. 3394.] But let it be observed, that whilst one complaining of subsequent breaches, say of an official bond, like that of a sheriff, may thus resort to a *scire facias* upon the judgment already obtained at the relation of some one else, yet he is not precluded from a new action on the bond, as if there had been no previous recovery. [Sangster v. Commonwealth, 17 Grat. 124.]"

The statute of 8 and 9 William III. prescribed: "That in all actions . . . upon any bond or bonds, or on any penal sum, for non-performance of any covenants or agreements in any indenture, deed or writing contained," the plaintiff might assign as many breaches as he pleased and the judgment should be for the penalty of the bond, but execution should issue for such damages only as were due by reason of such breaches, and that the judgment should stand as security for further breaches, for which a *scire facias* might issue wherever such further breaches were thereafter found by the court to have occurred.

Our statute (sections 468 to 477 inclusive) is somewhat similar to the Statute of William III., but in some

respects it is different. `Section 468 provides: "When any action shall be prosecuted in any court upon any bond for the breach of any condition *other than the payment of money,* or shall be prosecuted for any penal sum for the non-performance of any covenant or written agreement," etc.

The bond in question in this case is not such a bond as is contemplated by this statute. It is not a penal bond conditioned other than for the payment of money, and it is not a penal bond conditioned for the performance of any covenant or written agreement. It is not a penal bond at all. It contains none of the elements of a penal bond. It contains no penalty whatever. It provides for the payment of a sum certain, to-wit, six thousand dollars, not in gross, but in installments of fifty dollars a month. It nowhere provides that if any installment is not paid at the time specified, the whole sum of the bond shall become at once due and payable.

In our statute the provisions of law relating to penal bonds conditioned for the payment of money, and also penal bonds conditioned to do a collateral thing other than the payment of money, are contained in article 1 of chapter 6, Revised Statutes 1899, but although this is true it is plain that the article is made up of two originally different acts. The main idea permeating the provisions of law relating to the two kinds of bonds are the same as the Statutes of Anne and William. But there are such differences apparent between our statute and the English statutes as to arrest, at once, the attention, and to force the inquiry whether our statute is made up of the Statutes of Anne and William, with such changes as suggested themselves to the minds of our legislators; or whether our statute is borrowed from the statutes of some other State.

Induced by this thought, the mind is at once prompted to look to the statutes of the State of New York, principally because so large a part of our statute laws have been borrowed from that State. The result of such an inquiry is that the laws of New York are

found to be almost identical with our statutes. The phraseology of both statutes compels the conviction that our statute, passed for the first time in 1835 (R. S. 1835, p. 430), was borrowed from the New York statutes of 1829. The New York statutes relating to penal bonds, however, are not collected in the same article. Sections 464 to 467, inclusive, of our statute, are in essence and spirit and procedure like sections 12 and 13 of title II of chapter VI, vol. 2, page 353, Revised Statutes of New York 1829. While sections 468 to 477, inclusive, of our statute are in letter, essence, spirit and precedure like article II, title VI, chapter VI, page 378, Revised Statutes of New York 1829. For the purpose of perspicacity section 468 of our statutes and section 5 of article 2 of the New York statute are hereby placed in parallel columns.

They are as follows:

| | |
|---|---|
| Sec. 468, R. S. Mo. 1899.<br>"When an action shall be prosecuted in any court upon any bond for the breach of any condition other than the payment of money, or shall be prosecuted for any penal sum for the non-performance of any covenant or written agreement, the plaintiff, in his petition, shall assign the specific breaches for which the action is brought." | Sec. 5, Art. 2, Title VI, Chap. VI, Rev. Stats. N. Y. 1829.<br>"When any action shall be prosecuted in any court *of law*, upon any bond for the breach of any condition other than *for* the payment of money, or shall be prosecuted for any penal sum for the non-performance of any covenant or written agreement, the plaintiff, in his *declaration*, shall assign the specific breaches for which the action is brought." |

The only differences between our statute and the New York statute are the four words italicised herein in the New York statute, and those are immaterial.

Now read the corresponding part of the Statute of 8 and 9 William III., which is as follows: "That in all actions which from and after the said five and twentieth day of March, one thousand, six hundred and ninety-seven, shall be commenced or prosecuted in any of his majesty's courts of record, upon any bond or bonds, or on any penal sum, for non-performance of any covenants or agreements in any indenture, deed or writing contained, the plaintiff or plaintiffs may assign as many breaches as he or they shall think fit," etc.

The similitude between our statute and the New York statute is further apparent in our section 469 and their section 6; in our section 471 and their section 9; in our sections 473, 474, 475, 476 and 477, and their sections 11, 12, 13, 14 and 15.

It is therefore convincingly apparent that our statute is borrowed from the New York statute, and not from the English statutes. It is a rule of law that when a statute is borrowed from another State, the decisions of the State from which the statute is borrowed, interpreting such statute, are borrowed also. For it is presumed that the Legislature adopting the statute of a sister State knew of the interpretation placed upon the statute by the courts of such sister State, and intended that a like interpretation should be put upon the statute, after it became a part of the laws of the adopting State. When we adopted the New York statutes we therefore adopted the interpreting decisions of that State also.

It is conceded by every one that the bond in this case is not such a bond as comes within the express terms of either the Statute of Anne, or the Statute of William III., or of our statute. And this is strictly true. It does not come within the Statute of Anne because it is not a bond for the payment of money with a condition or defeasance to become void upon the payment of a lesser sum. It does not come within the Statute of William because it is not a bond for the breach of any condition other than for the payment of money, or for a penal sum for the non-performance of any covenant or written agreement. It is a bond for the payment of six thousand dollars in installments of fifty dollars a month.

But it is said that the English courts have held that bonds payable in installments, and likewise bonds conditioned for the payment of annuities, are within the statutes. It is true, as pointed out in the opinion of SHERWOOD, J., in this case, that the earlier English cases held that while such bonds were not within the letter they were within the equity of the Statute of Anne,

while other English cases place such bonds within the
Statute of William.    But this very conflict between the
English cases is enough to raise a question as to the
correctness of any of those cases.    A reading of the
statutes does not warrant any such interpretation of
either statute, and the fact that those courts were com-
pelled to say that such bonds came within the *equity* of
the statute shows how hard pressed they were to bring
such bonds within the statute.

But for the purposes of this case let it be conceded
that the English courts have so held, and then let the
legal tests be applied to see if those cases should be fol-
lowed in this case.

Take, first, annuities.    Under the old English prac-
tice the grantee of an annuity had three remedies to
collect arrears due: first, by an action of annuity; sec-
ond, by an action of debt; and, third, by an action of
covenant.    Of these, the old action of annuity has been
abolished and entirely superseded by the action of cov-
enant, and the action of debt is now held not to lie dur-
ing the life of the annuity.    So that for the recovery of
arrears of an annuity, during the continuance of the
annuity, only the action of covenant remains.    Under
the action of covenant, the recovery is only for the ar-
rears due and no more.    Under the obsolete action of
annuity, the judgment was for the arrears due and the
judgment remained as a security for subsequent
breaches.    During the space of a year after the judg-
ment the plaintiff was entitled to take out executions
to collect any arrears that fell due during that time,
and after the year the plaintiff was entitled to a *scire
facias* for subsequent arrears.    [Lumley's Law of An-
nuities, p. 392.]

On the other hand, under the action of covenant,
which, as stated, has entirely superseded the action of
annuity, the plaintiff "recovers all the arrears which
may be due when the action is commenced, but no more.
The judgment does not remain as a security for the an-
nuity in future, but a fresh action must be commenced

Vol 170 mo—37.

on each subsequent default." [Lumley's Law of Annuities, page 402.] And the author there says also: "Here there is a disadvantage in comparison with the action of annuity."

After thus pointing out the state of the law in England in cases where there is an agreement or covenant to pay an annuity, the same author (p. 399) in speaking of cases where there was a bond conditioned to pay an annuity, calls attention to the case of Morant v. Gough, 7 B. & C. 206, in which an action of debt was brought against the devisee of the obligor, after the obligor's death, and after the devisee's estate in the land had ceased, and says: "The point decided there was, that as the bond was for the payment of the annuity, and there was no penalty, the devisee was only liable to pay the annuity while his estate in the land continued. If it had been secured by a penalty, and that had been forfeited, either before the devisor's death or during the continuance of the devisee's interest, the latter might have been liable for the whole amount of the penalty, provided the value of his interest in the land was equivalent."

The author then adds (pp. 399 et seq.):

"At present, when an annuity is frequently granted by a bond in a penalty conditioned for the due payment of the annuity, the bond becomes forfeited on the breach of that condition by default of payment, and the obligee may sue in debt for the penalty. Where an action is brought on such a bond, the plaintiff must assign breaches, under the Statute 8 and 9 William III., c. II, as was holden in Collins v. Collins. And on judgment for the plaintiff on demurrer, or on default or confession, there must be a suggestion of breaches on the roll. In these cases the judgment by the provision of that statute remains as a security for the annuity as far as the penalty of the bond, and farther breaches which may occur, after the satisfaction of those for which the action is first brought, may be recovered thereon, though a *scire facias* must be sued out, calling upon the defendant to show cause why he should not satisfy these last-accrued

arrears. So that the proceedings appear very similar to those in the writ of annuity.

"After the judgment of the court in Collins v. Collins, two cases occurred in the court of common pleas, where a sort of equitable discretion was exercised, and this statute was not called in aid. In one, Howell v. Hanforth, where judgment was entered upon a warrant of attorney given to confess judgment on an annuity bond, and execution was sued out for the several breaches from time to time, without any *scire facias,* the court directed the judgment to stand as a security for the annuity, and execution to be taken out from time to time, as might be necessary, on application to the court. And in a subsequent case of a judgment on an annuity bond, the judgment was ordered to stand as a security, with a like liberty to issue execution for the arrears.

"Hence it was thought that this statute did not apply to annuity bonds, but after it had been held in Roles v. Rosewell, that the statute was compulsory on the plaintiff, it was determined by the Court of King's Bench that the judgment in Collins v. Collins was correct, and that on such bonds, after judgment for the plaintiff on demurrer, he must suggest breaches on the roll and proceed according to the directions of the act; which decision has been recognized in subsequent cases, and the practice has been conformable with it."

It is instructive to briefly analyze the English cases referred to by the author for the purpose of seeing the facts in judgment in those cases, and the reasoning employed by the courts in regard to the applicability of the Statute of William.

Collins v. Collins, 2 Burrow 820, was an action of debt upon a bond. The amount of the bond is not stated, nor does it appear whether it was a penal bond or a single bond. Upon oyer the condition of the bond appeared to be: "to pay the plaintiff an annuity of 10 pounds a year during his life; and likewise to maintain him in meat, drink, washing and lodging, in the dwelling house at Crundall-end, for and during his life." To the annuity the defendant pleaded a set-off;

viz., that there was only 60 pounds due and that the plaintiff owed the defendant 500 pounds.   To the maintenance clause, the defendant pleaded that the plaintiff voluntarily left the dwelling house at Crundall-end, and continued to absent himself therefrom, and that the defendant was ready and willing to maintain him at said house.   The plaintiff demurred to these pleas.   The question therefore was whether a debt could be set-off under the Statute of 8 George II., against an annuity, and whether the defendant had been guilty of a breach of the condition of the bond to maintain the plaintiff when he had voluntarily left the house at which he was agreed to be maintained.   The discussion of the case took a wide range.   It was agreed that under the statute of set-offs the judgment was required to be entered for the plaintiff for the sum truly and justly due after one debt had been set off against the other, and that the judgment was conclusive as to the rights of the parties; whereas in suits upon bonds under the Statute of William the judgment was for the penalty of the bond, the execution for the damages then due and the judgment remained as a security for further breaches.   From which it was contended that the right of set-off did not exist in such case, for it would cut off the plaintiff's right to recover for subsequent annuities.   Lord MANSFIELD held that both the Statute of George and of William were for the benefit of the defendant; that before the passage of these statutes defendants were compelled to go into a court of equity to obtain the relief that is afforded by those statutes at law.   The learned jurist then said:

"It is objected, first, 'that this is not an action brought upon a penalty for non-performance of an agreement or covenant *contained* in any *indenture,* deed or *writing.*'   This is an *agreement* between the parties, and an agreement *in writing;* the *condition of the bond* is *an agreement in writing;* and people have frequently gone into courts of equity upon conditions of bonds, *as* being agreements in writing, to have a *specific performance* of them.

"It is said that if the plaintiff should take his judgment upon this act of Parliament, it would *not* be a *judgment* for the *penalty*, but a judgment *only* for the *sum due,* and *no more;* and that after the matter has once passed *in rem judicatam,* the plaintiff *can not afterwards .recover any more* upon this bond, whatever may become due by future non-payments, for there is no provision 'that the judgment *shall stand as a security for future payments,*' as there was in the Act of 8, 9 W. 3, c. 11, made for the better preventing frivolous and vexatious suits.

"The judgment is indeed by this act of 8 G. 2 directed to be entered 'for no more than shall appear to be justly due to the plaintiff:' but as it is clearly *within the words and meaning* of the act, that the *penalty* is to *remain* as a security against future breaches, in this case of a *set-off* pleaded, as much as it would have done upon the Act of 8, 9 W. 3, c. 11, if *payment* had been agreeably to the directions therein contained.

"But as this case has not been before settled, 'that a set-off may be pleaded in such a case as this, where the condition is for the payment of an *annuity* on *growing sum*' " leave was given to withdraw the demurrer and plead over.

This is the case, and these are the facts in judgment in the case, which is relied on to support the English doctrine that bonds for the payment of annuities come within the Statute of 8 and 9 William III. It will be observed that the question of whether such bonds came within the Statute of William III., was not raised in that case at all. What is said there about that statute was wholly *arguendo.* The point in the case was whether a set-off was allowable against arrears due upon an annuity.

However, as will be hereinafter pointed out, even if annuity bonds do properly fall within the Statute of William, it by no means follows that the bond in question here falls within sections 468 et seq. of our statutes.

The cases of Howel v. Hanforth, 2 Wm. Black-

stone 843, and Ogilvie v. Foley, 2 Wm. Blackstone 1111, were not held to be controlled by the Statute of William and need not therefore be considered here.

Roles v. Rosewell, 5 T. R. 538, was an action of debt for a penalty of 100 pounds. It arose in this way. There was a controversy between the plaintiff and the defendant respecting the title to certain chattels, and for the purpose of settling the controversy it was agreed, ''that B. L. and W. W. should take an inventory and make a valuation of the goods; that the defendant should give his note, payable to the plaintiff, for so much as the goods should be valued at; that the note should remain in the hands of B. L. until the opinion of counsel could be obtained on a case to be stated between the parties, as to their respective claims, such case to be drawn up by H. Stephens and W. Tinney; that the defendant on giving such note should be put into the actual possession of the goods; and that the said opinion should be conclusive on the parties; and each party bound himself to the other in 100 pounds for abiding by that opinion, and for the performance of the agreement.'' The defendant got possession of the goods, and gave his note. The arbitrators valued the goods at 73 pounds, 18 shillings, 11 pence. The plaintiff's attorney prepared a draft of the case, but the defendant refused to join in it or to settle. The suit was to recover the 100 pounds. The defendant made default. The plaintiff, without executing a writ of inquiry, took out execution for the whole penalty, but indorsed on the writ, ''Levy 73 pounds, 18 shillings, 11 pence, besides costs and poundage.''

Upon a rule to show cause why the execution should not be set aside because the plaintiff had not assigned breaches as required by the Statute of William, it was argued, for the plaintiff, that notwithstanding the statute, the plaintiff was entitled to sue as at common law for the whole penalty. The Court of Exchequer held that the plaintiff could elect to proceed as at common law, or under the Statute of William, and discharged the rule. Upon writ of error to King's Bench, this

judgment was reversed, and Lord KENYON, Ch. J., and BULLER, J., were "strongly inclined to think that the Statute of William was compulsory, as being made for the benefit of the defendants. They said that the plaintiff in this case had made his election to proceed under the statute though he had not named the statute formally."

It is to be noted that that case did not involve the question of whether a bond conditioned for the payment of an annuity is or is not within the Statute of William. On the contrary the bond involved in that case was a bond conditioned for the performance of an agreement in writing, and hence was clearly within the Statute of William. And would also fall within the provisions of section 468 of our statutes, because it was a penal bond for the performance of a covenant or written agreement.

Willoughby v. Swinton, 6 East 550, arose under a rule to show cause why a *fieri facias* should not be quashed, and the money paid thereon be restored to the defendant. It appeared that the defendant had given the plaintiff a bond in the penal sum of one thousand and eighty pounds, conditioned for the payment of 494 pounds, 4 shillings, 5 pence, by yearly installments of fifty pounds each. The condition was that if default be made in the payment of any of the installments the bond should remain in full force. At the time the bond was given the plaintiff gave the defendant a memorandum which recited the terms and the giving of the bond, and then stipulated as follows: "Now I do hereby declare that nothing in the said bond contained shall authorize me to proceed upon any default of payment for any sum which shall not have become actually due at the time, nor tend in any manner to accelerate any of the other payments mentioned in said bond or the condition thereof."

Under this bond the defendant made payments, but became in arrears on account thereof in the sum of seventy-five pounds. He was arrested in an action of debt for the whole penalty but held to bail only for

seventy-five pounds the sum due at that time, The defendant pleaded that the bond was procured by covin, but made default at the trial, so that the plaintiff obtained a judgment for 80 pounds, 5 shillings, 6 pence, the amount of the installments due, with interest, which was paid. Thereafter the defendant did not pay another installment, and the plaintiff sued out a *scire facias* for 1080 pounds, and also 61 pounds damages, and indorsed to levy 50 pounds and interest, and under this writ 53 pounds, 6 shillings were paid.

Lord ELLENBOROUGH, Ch. J., held that Collins v. Collins, was decisive of the case, and that there was no difference between a bond to secure an annuity for life and a bond to secure a certain number of annual payments for so many years. GROSE, J., was of the same opinion. LAWRENCE, J., said that if a bond securing an annuity was within the Statute of William, he could not say that a bond payable in installments was not within the statute. And LEBANC, J., was of, substantially, the same opinion.

Walcot v. Goulding, 8 T. R. 126, was an action of debt on a bond for 5,000 pounds, conditioned to pay an annuity of 250 pounds to the plaintiff during his life. 'The plaintiff had judgment, and took out execution for 204 pounds, 10 shillings, without suggesting on the roll any breach of the condition: whereupon the defendant obtained a rule to show cause why the judgment and execution should not be set aside, on the ground that the plaintiff ought to have suggested a breach of the bond, under the Statute of William. The court said, ''that it was established by the case of Collins v. Collins, that a bond conditioned for the payment of an annuity, was within Stat. 8 and 9 W. 3; and that it was decided in the cases of Hardy v. Bern (5 T. R. 636), and Roles v. Rosewell, after great consideration, that in all cases within the provision of the Statute 8 and 9 W. 3, the plaintiff must assign breaches on the record, that statute being compulsory on him.'' Therefore the rule was made absolute.

Thus it will be seen that the evolution of the law

in England relating to bonds was as follows: First. Originally in all cases on penal bonds, whether conditioned for the payment of a lesser sum of money or conditioned to do a collateral thing, if the condition was not strictly performed and obeyed, the penalty became the debt and the obligee was entitled to recover the whole penalty. Second. This was considered so harsh that courts of equity relieved against the forfeiture, and without operating directly upon the judgments of the courts of law for the whole penalty, indirectly did the same thing, by reaching the parties and the law officers, and required the defendant to pay the whole penalty into court, then gave the plaintiff what was really due, and if it was a penal bond for the payment of a single smaller sum, returned the balance of the money to the defendant, or if it was a penal bond to do a collateral thing required the defendant to pay the amount of damages due up to that time, and stayed the execution as to the balance, and permitted the judgment of the court of law for the whole penalty to remain as a security for further breaches. If further breaches occurred within a year, the plaintiff might issue other executions as of course, but after the year the plaintiff was required to sue out a *scire facias.* In consequence of this interference by courts of equity with the judgments of courts of law, the famous conflict between Lord COKE and Lord ELLESMERE arose, which required the royal edict to settle. Third. These reasons led to the passage, first of the Statute of William and ten years later of the Statute of Anne. These statutes were intended to remedy the harshness of the common law in permitting a recovery of the whole penalty, if there was the slightest default in the condition of the bond, and to require courts of law to do in such cases, what courts of equity had theretofore done. Fourth. At first it was held that bonds conditioned for the payment of annuities and bonds payable in installments were not within the Statute of Anne. [Ex parte Groome 1 Atkyns 118; Land v. Harris, 1 Strange's Rep. 515.] (It was not then even supposed that such bonds came

within the older Statute of William.)    Fifth.    Later,
it was held that such bonds while not within the letter,
were within the *equity* of the Statute of Anne, and the
defendant was permitted to bring the arrears in court,
and be discharged, but there was no judgment for the
whole penalty, the judgment to stand as security for
further breaches.    [Bridges v. Williamson, 2 Strange's
Rep. 814.]    Sixth.    Then the case of Van Sandau v.
— — — — —, one, etc., 1 Barn. & Ald. Rep. 214, arose.
It was an action of debt on a penal bond for ten thou-
sand pounds conditioned for the payment of five thou-
sand two hundred and fifty pounds on September 20,
1820, with interest in the meantime, payable semi-an-
nually.    The obligor did not pay the interest due Sep-
tember 29, 1817.    The plaintiff sued for the whole pen-
alty.    Lord ELLENBOROUGH held that there had been
a breach of the bond which entitled the plaintiff to a
judgment for the whole penalty.    But added that it
was another question to what extent the court would
feel disposed to relieve the defendant against the con-
sequences of the judgment, and concluded by permitting
the plaintiff to proceed, *"the judgment to stand as a
security."*    It is not said whether this was by virtue
of the statutes or the old or later English rules, or ac-
cording to the rule in equity.    It seems clear that it can
not be properly classified under any of those rules of
law.    Seventh.    Then the case of Murray v. Earl of
Stair, 2 Barn. & Cress. 82, was decided.    It was an ac-
tion of debt upon a penal bond for four thousand
pounds, conditioned for the payment of two thousand
pounds six months after the death of the Earl.    It was
held that it was not within the Statute of William, but
was controlled by the Statute of Anne, and that upon
payment of the lesser sum the defendant was entitled
to be discharged.    Eighth.    Then the case of Collins
v. Collins, 2 Burrow 820, arose.    It was an action of
debt upon a bond conditioned to pay an annuity and
to maintain the plaintiff in meat, drink, washing and
lodging.    There was no question presented for adjudi-
cation except the right to set-off a debt the plaintiff owed

the defendant against the arrears of annuity the defendant owed the plaintiff. Lord MANSFIELD, however, held that the condition of the bond was an agreement in writing within the meaning of the Statute of William, and that the bond was therefore within that statute, and allowed the set-off. Thus bonds conditioned for the payment of annuities were first held to be within the Statute of William. Ninth. Willoughby v. Swinton, 6 East 550, was an action upon a penal bond conditioned to pay a lesser sum, in installments, and it was held that if annuity bonds were within the Statute of William, bonds payable in installments were also within the statute. Tenth. Walcot v. Goulding, 8 T. R. 126, was an action of debt on a bond for five thousand pounds. conditioned to pay an annuity of two hundred and fifty pounds for life. It was held, upon the authority of Collins v. Collins, that such bonds were within the Statute of William, and therefore the plaintiff must assign breaches.

But if it be conceded that the English courts finally found a proper classification of annuity bonds and bonds payable in installments under the Statute of 8 and 9 William III., still that fact is by no means decisive of the case at bar, nor are those decisions controlling here, for the following reasons:

First. Because our statute is borrowed from New York and not from the English statutes, and the decisions of New York construing the statute were borrowed with the statute, and those rendered since then are persuasive authority, and the New York courts hold that annuity bonds and bonds payable in installments are not within the statute. [Spaulding v. Millard, 17 Wend. 331; Harmon v. Dedrick, 3 Barb. 192; Wood v. Wood, 3 Wend. 454; Nelson v. Bostwick, 5 Hill 37.] The courts of that State further hold that the several breaches are in the nature of distinct causes of action. [Beach v. Barons, 13 Barb. 305.]

In Harmon v. Dedrick, supra, the Supreme Court of New York refer to the English rule laid down in Willoughby v. Swinton, 6 East 550, and hold that no such

rule obtains in New York in cases of bonds payable in installments, and accordingly held that *scire facias* would not lie to recover after breaches.

Nelson v. Bostruck, 5 Hill 1. c. 40, was an action on a bond for $250, conditioned to pay the costs of a certain case, and BRONSON, J., discussing the difference between the New York statute and the English statute, said:

"The Statute 8 and 9 William 3., c. 11, provided that the plaintiff *might* assign breaches, and only extended, in terms, to bonds for the performance of covenants. And yet upon the construction of that statute, it has been settled that the plaintiff *must* assign breaches, and that he must do so in all cases, except upon bail bond, where the condition is not for the payment of a gross sum of money by the obligor at a specified time. He must even do so where the condition is for the payment of an annuity. [2 Saund. 187, note (2); Walcot v. Goulding, 8 T. R. 126.] But with us, breaches need not be assigned where the condition is that the obligor will pay a certain sum of money in specified installments. [Spaulding v. Millard, 17 Wend. 331.] Under the English decisions this was clearly a case for assigning breaches, and our statute is much broader in its terms than theirs. The words are, 'the plaintiff shall assign breaches when the action is upon a bond "for the breach of any condition other than for the payment of money."' [2 R. S. 378, sec. 5.] It extends to every kind of condition, excepting one that the obligor will pay a certain sum of money at a particular time, or in specified installments."

In the same case COWEN, J., said:

"The 2 R. S. 300, (2 Ed.), sec. 6, requires breaches to be assigned by the declaration in an action on a bond for the breach of a condition other than for the payment of money; also in an action for any penal sum for the non-performance of any covenant or written agreement. The bond in question was conditioned to pay money. The award of costs could be for nothing else. The case is, therefore, out of the words of the statute. In Mann

v. Eckford's Ex'rs (15 Wend. 502, 514), cited for the plaintiff in error, the action was on a bond or penal sum to secure the payment of money due by the written agreement of another. It came literally due within the last clause of the statute. Here the penalty is to secure the payment of money to become due under a future award of costs. This is the same as a sum *in numero*, except that the certainty is to arise by the act of a court. It is none the less certain in legal construction; for that is certain which can be made so. It may be admitted that where the condition is not to pay money in terms, but only to do what may or may not be resolved into an obligation to pay it, .e. g., to perform an award, breaches must be assigned. [Allen v. Watson, 16 John. 205, 209; Welch v. Ireland, 6 East 613.] The rule must be drawn from the peculiar phraseology of our own statute, however, rather than that of 8 and 9 William 3., ch. 11, sec. 8, whose language is different. There are some decisions under the latter act which certainly can not be applied to ours; such as that a bond conditioned to pay money by installments calls for an assignment of breaches. [Willoughby v. Swinton, 6 East 550.] The case cited by the counsel for the plaintiff in error, viz., Walcot v. Goulding (8 T. R. 126) would probably come within the second clause of our statute, as being of a bond conditioned to pay money due on an independent written agreement. To say, as some of the English cases do, that the statute extends to a condition for performing an agreement implied by the condition itself, would destroy all exception, and require breaches in an action on every common money bond. [Vid. 1 Saund. 58, note (1); 1 Selv. N. P. (Ed. of 1839) 588.] However, if the rule be taken, as it is understood by Serj. WILLIAMS [2 Saund. 187, note (2).] that breaches must be assigned in all cases except where the condition is to pay a gross sum of money, or where the action is on a bail bond, it can scarcely be said to follow that the present case would not be without the statute.''

These decisions are emphasized and accentuated by

the case of Wood v. Wood, 3 Wend. 454, which arose prior to the passage of their statute, in which the cases of Collins v. Collins, Willoughby v. Swinton and Walcot v. Goulding, are cited and approved, and the English rule followed.

It is only necessary to add that our statute was borrowed from New York, and is impressed with the construction of the New York courts, and the decisions of those courts are and ought to be controlling here.

Since writing the foregoing, my attention has been called to the fact that the Statute of 1835 hereinbefore referred to, was not the first statute on the subject of penal bonds that was enacted in this State, but that prior to that, in 1821, there was enacted a law on that subject which was carried unchanged into the revision of 1825, and appears in vol. 2, pp. 615 and 616, and is as follows: "An Act to regulate proceedings on Penal Bonds.

"Be it enacted by the General Assembly of the State of Missouri: That in all actions brought upon bonds or bills, in which there is a condition or defeasance to be void on payments of a lesser sum at a day certain, if the defendant shall bring into court all the principal, interest and costs of such action, the money so brought in shall be deemed a free discharge, and the court shall give judgment accordingly, and in all actions brought on such bonds or bills, the plaintiff shall set out the condition in his declaration, and may assign as many breaches as he may think proper, and if judgment be recovered either on verdict, confession, by default or *nil dicit*, such judgment shall be entered for the sum or sums of money really due, according to such condition or defeasance with interest and costs, and execution shall issue thereon accordingly, and for no more.

"Sec. 2. Be it further enacted, That all actions upon deeds or bonds for any penal sum for non-performance of any conditions, covenants or agreements in any indenture, deed, or writing contained, the plaintiff may assign as many breaches as he may think fit, and the jury upon the trial of such action, may assess damages for such of the said breaches so to be assigned, as the plaintiff

upon trial of such issues shall prove to have been broken, and that the like judgment shall be entered on such verdict as heretofore hath been usually done in such like actions; and if judgment shall be given for the plaintiff on a demurrer, or by confession, default or *nil dicit,* the plaintiff upon record may suggest as many breaches of the covenants and agreements as he shall think fit, upon which a jury shall be summoned as in other cases, to enquire into the truth of every one of those breaches, and to assess the damages which the plaintiff may have sustained thereby, and in case the defendant after such judgment entered, and before any execution executed, shall pay into the court where the action shall be brought, to the use of the plaintiff or his executors or administrators, such damages so to be assessed by reason of all or any of the breaches of such covenants or agreements, together with the costs of suit, a stay of execution on said judgment shall be entered upon record; or if by reason of any execution executed, the plaintiff, or his executors or administrators, shall be fully paid or satisfied, all such damages so to be assessed, together with his costs of suit, and all fees for executing the said execution, the body, lands or goods of the defendant, shall be forthwith discharged from the said execution, which shall likewise be entered upon record, but notwithstanding in each case such judgment shall remain as a further security to answer to the plaintiff and his executors or administrators, such damages as shall or may be sustained for the further breach of any covenant or agreement in the same indenture, deed or writing contained; upon which the plaintiff may have a *scire facias* upon the said judgment against the defendant, his heirs, terre tenants, his executors or administrators, suggesting other breaches of the said covenants, conditions or agreements, and to summon him or them respectively to shew cause why execution shall not be had or awarded upon the said judgment, upon which there shall be the like proceedings as was on the action of debt upon the bond or obligation for assessing damages upon the trial of issues joined upon such

breaches, or inquiry thereof; upon a judgment on a demurrer, or by confession or *nil dicit* in manner aforesaid, of such future damages, costs and charges as aforesaid, all further proceedings on the said judgment are again to be stayed, and so *toties quoties;* and the defendant, his body, lands or goods, shall be discharged out of execution as aforesaid. This act shall take effect and be in force from and after the first day of August next. Approved, 27th June, 1821.''

It is apparent that section 1 of this act is substantially the same as the Statute of Anne, and that section 2 is almost literally the Act of William. So that originally we adopted the English statutes and with them, we adopted the decisions of the English courts construing those statutes.

Thereafter, the Act of 1835 was enacted, and the question is, was that act evolved out of the brains of our legislators as an original act, founded upon and built up from the Act of 1821, or was it borrowed from the New York statutes?

The similarity of language employed in the Act of 1821, with the Statute of Anne, and especially with the Statute of William, clearly shows that the Statute of 1821 was borrowed from the English statute, with only such changes as the difference in our practice and in the composition and character of our courts necessitated.

On the other hand, the language, arrangement and genius of our Statute of 1835, is so nearly identical with that of the New York Statute of 1829, as to point unerringly to the latter as the model and source of the former.

Our statute and the New York statute are so much alike that the conclusion is unavoidable that our statute was borrowed from the New York statute, or else that both came from a common source, and that source was not the Statute of Anne or William. In fact, the likeness between our statute and the New York statute is so great that if any man had claimed that with the English statutes as a basis, he had written our statute without having seen the New York statute, no one would have

believed him and he would have convicted himself of being a plagiarist.

Upon this showing the impartial legal mind is forced to the conclusion that our Statute of 1835 was borrowed from the New York Statute of 1829, and this being true, we took the New York cases, reviewed herein, with it. Therefore, the New York cases enunciate the rule that should obtain in the construction of our statute, and the English cases construing the essentially different English statutes are not proper precedents to follow.

But for the sake of argument, let it be assumed that our statute was not borrowed from the New York statute, but was a wholly independent, original production; the question then arises, how should our statute be construed?

Under this assumption, the question is a matter of first impression in this State: which cases ought this court to follow, the English cases, construing the dissimilar English statutes, or the New York cases, construing the exactly similar New York statute? Can there be but one answer to this question? But suppose the mind is still in doubt, there is yet one consideration which ought to settle the question, to-wit, why was the Act of 1835 passed? What evils was it intended to remedy? If the Act of 1821, borrowed from the English statutes and understood as the English courts construed it, was intended to be the law in this State thereafter, why did the Legislature pass the Act of 1835? If the English law and the English cases had proved satisfactory from 1821 to 1835, why was the law amended in 1835? It can not be said that the Act of 1835 was intended as a simple continuation of the Act of 1821, but dressed in different words. For, as the New York courts have aptly pointed out, there is so much difference between their Act of 1829 and the English statutes as to compel the courts of that State to cease following the English cases, and to take a radically different and diametrically opposite view of their statute.

Vol 170 mo—38.

I repeat, if the Act of 1821 was intended to be the rule of law in this State, why was the Act of 1835 passed? If the English statutes so filled the wants of our people, why did our legislators change the Act of 1821? If the English decisions were acceptable to our conditions, why did our Legislature change our Act of 1821? There must have been a reason for such a change in the law of this State. It must have been because the English decisions were not acceptable to our people. It must have been for the same reason that induced the Legislature of New York to enact their Statute of 1829. As already pointed out, prior to 1829, the courts of that State followed the English cases relied on in this case. The people then enacted a law of their own, manifestly because they were dissatisfied with the English statutes and the English decisions. Thereafter, the New York courts ceased to follow the English cases, and held that the English decisions did not apply to the New York statute.

The conditions that thus operated to change the course of decisions in New York, are present in this case in Missouri to-day. The only difference is that in New York, prior to 1829, they had only the English decisions construing the English statutes, as a guide and precedent, while in Missouri, prior to 1835, we had our Act of 1821, which was clearly taken from the English statutes, with the English decisions impressed thereon. The difference, therefore, is not real, and hardly seeming.

The same reasons must therefore have operated to cause the repeal of the Act of 1821, by the passage of the act of 1835 in Missouri, that operated to cause the passage of the New York Statute of 1829, and the consequent abandonment of the English rule and of the English cases. That reason could only have been that our people were not satisfied with the old law and the English decisions, and, therefore, changed the law by enacting the Act of 1835. This being true, the New York cases construing the similar New York law, are the only cases extant that construe a law like ours, and, hence, these de-

·cisions, even .if not adopted by us, ought to be followed here.

Aside from these considerations, the New York de-·cisions correctly construe the New York statute and, therefore, apply to our similar statute. Bonds secur-ing the payment of annuities and bonds payable in in-·stallments are not within the letter of our statute, nor are they within the evils intended to be remedied by our ·statute. Such bonds are conditioned for the payment of money, and, therefore, they do not fall within the first class of bonds treated of by section 866, Revised Statutes 1889, for that pertains only to bonds condi-tioned "*other than for the payment of money.*" Neither ·do such bonds fall within the second class of bonds treated of by section 866, for that pertains to actions for a "*penal sum for the non-performance of any covenant or written agreement.*" Such bonds are not penal bonds at all. They have no penalty prescribed for the non-performance of any covenant or written agreement. The evil sought to be remedied in England, first by ·courts of equity, and later by statute, was to prevent the recovery of the whole penalty wherever the obligor failed in the slightest particular to comply with his agreement, and to limit the recovery to the damage act-ually suffered. In bonds payable in installments there is no penalty, hence, there could be no action to recover any penal sum, and, therefore, such bonds do not fall within the terms of the statute. And this is true even if the condition of the bond be construed to be a written agreement as Lord MANSFIELD held in Collins v. Col-lins. That eminent jurist failed to observe the fact in that case, that the suit was not to recover a penal sum and that the Statute of William only covered suits to re-cover a *penal* sum for the non-performance of a cove-nant or written agreement, and that the evil intended to be remedied by that statute, was the recovery of the penalty and not of the real damages.

The original idea of having the judgment upon a bond conditioned to do a collateral thing, remain as se-·curity for further breaches, was that the bond became

merged in the judgment and, therefore, the same or any other person who might thereafter be injured by a further breach must proceed on the judgment and not on the bond. This was true as to all such bonds, even official bonds. But the English courts did not adhere to this. For later they permitted parties to proceed on the judgment by *scire facias,* or to bring new actions on the bond, as they elected. There is no more reason for treating bonds payable in installments as merged in the judgment when suit is brought and judgment entered for one installment, than there is to treat leases as merged in the judgment rendered for a month's rent. As hereinbefore pointed out, in England, an annuity must now be recovered in an action of covenant, and the judgment does not merge the agreement or covenant, nor does the judgment stand as security for further breaches, and there is therefore no reason for holding that a judgment on a bond securing an agreement to pay an annuity should be treated differently from a judgment on the agreement to pay the annuity itself. It is a suit to recover exactly what its name expresses, an installment. That is what the obligor agreed to pay at that time, and that is the sole breach in the case. The obligor did not agree that if any installment was not paid when due, the whole bond should become due, nor did he agree to pay a penal sum in the event the installments were not promptly paid. Hence, such bonds do not fall within our statute, nor for that matter within the English statutes, except by what I deem a misconstruction of those statutes, nor do they come within the evils intended to be remedied.

It necessarily and logically follows that the statutes of this State relating to penal bonds conditioned other than for the payment of money (sec. 468 et seq., R. S. 1899) do not apply to bonds payable in installments and, therefore, there was no law which commanded, required or permitted the entry of such a judgment as was entered by the nunc pro tunc order in this case. It also follows that the cases of Rees v. Morgan, 3 T. R. 192; Jones v. Hart, 60 Mo. 358, and Railroad v. Mockbee, 63

Mo. 348, have no application to this case, for the reason that in each of those cases the law prescribed the form and nature of the judgment that should be entered.

For these reasons, I am of opinion that the circuit court has no power to enter the nunc pro tunc judgment in this case, and, therefore, its judgment should be reversed. I further agree with the opinion of SHERWOOD, J., in this case. All concur.